125 F.Supp.2d 930 (1999)
Daniel BASILE, Petitioner,
v.
Michael BOWERSOX, Superintendent, Potosi Correctional Center, Respondent.
No. 497CV1110ERW.
United States District Court, E.D. Missouri, Eastern Division.
December 16, 1999.
*931 *932 *933 Daniel Basile, Mineral Point, MO, pro se.
Eric W. Butts, Philip M. Horwitz, Swaney and Ram, St. Louis, MO, for petitioner.
Michael J. Spillane, Attorney General of Missouri, Assistant Attorney General, Jefferson City, MO, for respondent.

MEMORANDUM AND ORDER
WEBBER, District Judge.
This matter is before the Court on Petitioner Daniel Basile's Petition for Writ of Habeas Corpus by a Petitioner in State Custody Under a Sentence of Death [document # 6].

I. FACTS

Under the AEDPA, a presumption of correctness attaches to state court findings of fact. 28 U.S.C. § 2254(e)(1); Tokar v. Bowersox, 198 F.3d 1039, 1044 (8th Cir. 1999). A petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Basile has set forth no clear and convincing evidence challenging the state courts' findings of fact. Accordingly, the Court accepts the following facts as stated by the Missouri Supreme Court in State v. Basile, 942 S.W.2d 342, 347-49 (Mo. banc 1997). See Poree v. Cain, 1999 WL 518843, at *6 (E.D.La. July 20, 1999) (accepting facts as stated by Louisiana Supreme Court).
The events leading up to the murder began on January 10, 1992, when James Torregrossa went to get a tire for his ex-girlfriend at the Old Orchard service station in Webster Groves. Richard DeCaro worked at the station. Torregrossa and DeCaro knew each other because they both belonged to Gold's Gym. DeCaro told Torregrossa that he had heavy payments on his van and asked Torregrossa if he knew of anyone that could "take it off his hands." In the same conversation, DeCaro asked if Torregrossa knew anyone who could "put a hit on somebody" for him. DeCaro also stated that his wife thought he was having an affair with his secretary and that he would not wish marriage on anyone. Ten days later, DeCaro purchased a $100,000 life insurance policy on behalf of his wife, Elizabeth, listing himself as the primary beneficiary. On January 26, 1992, Richard DeCaro struck Elizabeth with their van, knocking her through the garage wall into the kitchen. She sustained severe bruising. The insurance company paid Richard DeCaro over $30,000 as a result of this incident. In January of 1992, DeCaro asked Craig Wells, a manager at Old Orchard service station, if he knew anyone who could steal his van. Wells introduced DeCaro to Basile. The two met, and DeCaro offered Basile $15,000 to steal the van and kill Elizabeth. On February 8, 1992, Basile stole the van, drove it to Jackson, Missouri, and burned it. He received $200 for this job.
On February 28, 1992, Basile asked his friend, Jeffrey Niehaus, for a stolen gun that was not traceable. On March 4, Basile showed his half-brother, Doug Meyer, a .22 caliber semi-automatic pistol with pearl-like grips. He claimed that he bought the gun from his father for $100. On March 5, Basile asked another friend, Susan Jenkins, to get him some latex gloves from the doctors offices in which she worked. On March 6, Basile told Meyer that he could not work that day because he was working for Richard DeCaro.
On March 6, 1992, Richard DeCaro picked up two of his four children from school and then went home to pick up the other two. He drove all four of the children and the family dog to the Lake of the Ozarks, leaving St. Louis a little after noon. They checked into the Holiday Inn at the lake at 2:59 p.m. Two of *934 the children testified that they saw their mother alive before they went to school that morning. They testified that the dog would always bark at strangers.
Between 2:00 and 2:30 p.m., a witness noted that the DeCaro garage door was closed. Elizabeth DeCaro left work at 2:20 p.m. At 3:15 p.m., a neighbor stopped by and noticed the garage door was open and that the DeCaros' Blazer with personalized license plates reading "RIK-LIZ" was in the garage, but no one answered the doorbell.
At 4:15 p.m., Basile was seen driving the DeCaro's Blazer in St. Charles. That evening around 6:30 to 7:00 p.m., Basile called an ex-roommate for a ride, stating "Things went down. I did what I had to do." At 7:00 p.m., Basile called Doug Meyer and asked if Meyer had garage space where Basile could work on his car. Basile drove the Blazer to Richard Borak's home in Florissant and gave him a "boom box" stereo stolen from the DeCaro residence as a birthday gift. Basile told Borak that he "did this lady." Just after 8:00 p.m., the Blazer was spotted heading south on Interstate 270. At 10:30 p.m., Basile went to Meyer's house, where they ate pizza before going out for drinks.
Elizabeth DeCaro had planned to meet her sister, Melanie Enkleman,[1] for dinner at 5:00 p.m. When the victim failed to show up for dinner or answer her telephone, Enkleman and a mutual friend went to the DeCaro home. They went in through an open side door in the garage and then through an open door leading into the house. They found Elizabeth DeCaro lying face-down on the kitchen floor. Enkleman called 911 at around 8:00 p.m.
Elizabeth DeCaro had two gunshot wounds in the back of her neck and bruises on her body. When she was shot, the gun was in contact with her body, and she was either kneeling or lying down. The bullets recovered from her body were .22 caliber. Police found no signs of forced entry. Audio-visual equipment had been removed from the home, but the cables and wires had been carefully unplugged or unscrewed from the walls.
On March 7, 1992, after reading about the DeCaro death in the paper, Basile called Craig Wells and stated, "It looks like I've gotten set up." On March 9, Meyer found the DeCaro's dismantled Blazer in the garage that he had provided for Basile. Meyer helped Basile take parts of the Blazer to the dump. Meyer realized that the Blazer belonged to DeCaro and confronted Basile. Basile admitted to Meyer that he stole the Blazer. At trial, Meyer testified that Basile told him "it was either him or her, and he wasn't going back to jail." Basile told Meyer that he was a thief, not a murderer. On March 11, Meyer contacted the police.
On March 12, 1992, Basile went to Kenneth Robinson's trailer and told Robinson that he was in trouble because the police thought that he had "done the van and the lady." Robinson contacted the police. The police arrested Basile a few hours later.
In the investigation, police found a license plate from the stolen and burned van in Cape Girardeau County. They also found the van itself. The dismantled remains of the DeCaro's Blazer was found in an apartment garage near Fenton, Missouri. Also in the garage was a portable stereo unit. Police later recovered the DeCaro's stolen "boom box" from Ricky Borak's apartment.
Basile did not testify on his own behalf during trial. He presented the testimony of four witnesses. The jury found Basile guilty of first degree murder. Basile also did not testify in the penalty *935 phase. According to a stipulation, he had prior convictions for burglary, stealing and assault. There was testimony that Basile had strangled his neighbor on one occasion and threatened to kill an ex-girlfriend's husband. Elizabeth DeCaro's mother and sister testified about the victim's life and how her loss impacted the family.

II. PROCEDURAL HISTORY

Basile was tried in the Circuit Court of St. Charles County, Missouri, by a Montgomery County jury for the murder of Elizabeth Ann DeCaro. State of Missouri v. Daniel Anthony Basile, Cause No. CR129-65F. The trial began on April 25, 1994 and concluded on May 7, 1994, with the jury's verdict convicting Basile of first degree murder. The jury found that Basile murdered Elizabeth DeCaro for another for the purpose of receiving money or other things of value, and that Basile murdered DeCaro as an agent or employee of Richard DeCaro. See R.S. Mo. § 565.032(4) and (6) (1986). Based on these aggravating circumstances, the jury assessed and declared the penalty of death. Id. On July 1, 1994, Judge Lucy Rauch sentenced Basile to death.
On January 23, 1996, following an evidentiary hearing, Judge Rauch denied Basile's timely filed Rule 29.15 motion. The Missouri Supreme Court affirmed both the denial of post-conviction relief and Basile's conviction and sentence, State of Missouri v. Daniel Basile, 942 S.W.2d 342 (Mo. 1997), and subsequently denied Basile's motion for rehearing. The United States Supreme Court denied certiorari on July 8, 1997. Basile v. Missouri, 522 U.S. 883, 118 S.Ct. 213, 139 L.Ed.2d 148 (1997).
On October 7, 1997, Basile filed a pro se motion to appoint counsel in this Court, and the Court appointed counsel to represent Basile on the same day. On July 1, 1998, Basile filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, raising thirteen grounds for relief. Respondent concedes that Basile has exhausted his available state remedies. (Resp. at 7-8.) Basile's Petition was fully briefed on November 19, 1998. The Court denied Basile's motion for evidentiary hearing on January 13, 1999.

III. STANDARDS OF REVIEW

A state prisoner may petition for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner is entitled "to relief on federal habeas corpus only upon proving that [his] detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution." Wessling v. Bennett, 410 F.2d 205, 209 (8th Cir.1969) (quoting Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)).

A. COGNIZABILITY

"`[I]t is not the province of a federal habeas court to re-examine state-court determinations of state-law questions.'" Gee v. Groose, 110 F.3d 1346, 1349 (8th Cir.1997) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)). Rather, a federal court is limited "'to deciding whether a conviction violated the Constitution, laws or treaties of the United States.'" Id. Thus, claims that do not reach constitutional magnitude cannot be addressed in a petition for habeas corpus. Carter v. Armontrout, 929 F.2d 1294, 1296 (8th Cir.1991).

B. PROCEDURAL DEFAULT

"Federal habeas review is barred when a federal claim has not been `fairly presented' to the state court for a determination on the merits." Hall v. Delo, 41 F.3d 1248, 1249 (8th Cir.1994). In Missouri, a claim must be presented at each step of the judicial process in state courts to avoid procedural default. Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir.1994). Even if a federal claim has been "fairly presented" *936 to the state court, a federal court generally will decline to consider a claim if the state court denied it on "independent and adequate state procedural grounds." Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).
A Missouri court may "lift" the bar on an otherwise procedurally defaulted claim by reviewing it on the merits. Jolly, 28 F.3d at 53-54. Absent a decision by a state court to lift the procedural bar on an otherwise procedurally defaulted claim, a federal court will not consider the claim unless petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750, 111 S.Ct. 2546.
To show cause excusing his procedural default, a petitioner must show that some external factor beyond his or his attorney's control caused the procedural default. Turner v. Delo, 69 F.3d 895, 896-897 (8th Cir.1995). A petitioner asserting prejudice must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

C. AEDPA STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), P.L. 104-132, 110 Stat. 1214, made numerous changes to Title 28, Chapter 153 of the United States Code, 28 U.S.C. §§ 2241-2255, the chapter governing federal habeas petitions. Specifically, in Section 104 of the AEDPA, Congress added new subsection (d) to 28 U.S.C. § 2254. That subsection provides as follows:
(d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim 
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d).
In a recent decision, the Eighth Circuit set forth the procedure for a court's analysis of a habeas petition. "Because § 2254(d)(1) directs this court to grant [petitioner's] petition only if the trial court's decision was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, we must first identify the controlling case law." Long v. Humphrey, 184 F.3d 758, 759 (8th Cir.1999). If clearly established Supreme Court precedent exists governing petitioner's claim, the court "must next decide whether the trial court's decision was `contrary to' or an `unreasonable application' of that precedent." Id. at 760. A trial court's decision may be found "contrary to" established Supreme Court precedent only if (1) the trial court "made an error of pure law," id. (citing Drinkard v. Johnson, 97 F.3d 751, 768 (5th Cir. 1996)), or (2) "if controlling case law requires different outcome either because of factual similarity to a state case or because general federal rules require a particular result in a particular case." Id. (citing O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir.1998)). If the trial court's decision was not contrary to established Supreme Court precedent, the habeas court next considers the unreasonable application prong of § 2254(d)(1). After considering various circuits' approaches to defining an unreasonable application of Court precedent, Long found persuasive the Third Circuit's approach in Matteo v. Superintendent, *937 SCI Albion, 171 F.3d 877, 889 (3d Cir. 1999) (en banc), in which the court held, "The federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." The Eighth Circuit further advised that "mere disagreement with the trial court's conclusions is not enough to warrant habeas relief." Id. at 760-61.
Long also noted that, "To the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness ... of the state court's treatment of the contested issue." Id. (quoting Matteo, 171 F.3d at 890). This statement is an important indicator of the Eighth Circuit's interpretation of "clearly established Federal law as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), which could be understood to mean that a habeas court should look only to Supreme Court cases in evaluating a habeas petition. As Matteo explained:
Furthermore, although AEDPA refers to "clearly established Federal law, `as determined by the Supreme Court of the United States,'" we do not believe federal habeas courts are precluded from considering the decisions of the inferior federal courts when evaluating whether the state court's application of the law was reasonable.... Instead, the primary significance of the phrase "as determined by the Supreme Court of the United States" is that federal courts may not grant habeas corpus relief based on the state court's failure to adhere to the precedent of a lower federal court on an issue that the Supreme Court has not addressed. Thus, in certain cases it may be appropriate to consider the decisions of inferior federal courts as helpful amplifications of Supreme Court precedent.
171 F.3d at 889. Accordingly, decisions from the Eighth Circuit continue to be binding upon this Court. Atley v. Ault, 21 F.Supp.2d 949, 955 (S.D.Iowa 1998) (citing Evan Tsen Lee, Section 2254(d) of the New Habeas Statute: An (Opinionated) User's Manual, 51 Vand.L.Rev. 103, 131-36 (1998)). Although this Court must review state court decisions with reference to "[f]ederal law as determined by the Supreme Court," "the doctrine of stare decisis requires district judges to assume that courts of appeals have properly interpreted Supreme Court edicts." Lee, 51 Vand.L.Rev. at 131. Accordingly, the Court will follow Eighth Circuit case law to the extent it applies to Petitioner's claims.

IV. DISCUSSION

Basile raises the following grounds in support of his Petition for Writ of Habeas Corpus:
(1) The prosecutor violated Basile's rights under the Sixth, Eighth, and Fourteenth Amendments to the Constitution by making improper arguments
(a) during the guilt phase closing argument, by arguing facts not in the record, improperly injecting his personal beliefs, making improper adverse inferences, and attacking defense counsel; and
(b) during the penalty phase closing argument, by making improper, inflammatory arguments, improperly injecting his personal beliefs, and improperly suggesting to the jury that there was a correlation between capital punishment and reduction in crime.
Where defense counsel failed to properly object to these arguments, Basile was denied effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments;
(2) The prosecutor violated Basile's rights under the Sixth and Fourteenth Amendments by making inflammatory *938 statements to prospective venirepersons, personally attacking defense counsel, and injecting his personal opinion. Defense counsel's failure to request a mistrial on the basis of these improper statements violated Basile's right to effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments;
(3) The trial court violated Basile's rights under the Sixth, Eighth, and Fourteenth Amendments by allowing the introduction of evidence of Basile's other crimes, bad acts, and bad character even though Basile had not placed them at issue. Defense counsel's failure to object to the introduction of this evidence violated Basile's right to effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments;
(4) Basile's rights under the Sixth, Eighth, and Fourteenth Amendments were violated when the prosecutor knowingly introduced improper evidence and conducted himself in a manner intended to inflame the passions of the jury. Defense counsel's failure to object to this prosecutorial misconduct violated Basile's right to effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments;
(5) Basile's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated when the prosecutor repeatedly elicited improper hearsay testimony during trial. Defense counsel's failure to object to the hearsay testimony violated Basile's right to effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments;
(6) The trial court violated Basile's rights under the Eighth and Fourteenth Amendments by permitting the introduction of victim impact evidence during the penalty phase of his trial. The Rule 29.15 motion court's failure to grant relief to Basile on this issue denied his rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments. Defense counsel's failure to request a penalty phase instruction as to the limited use of victim impact testimony violated Basile's Sixth Amendment right to effective assistance of counsel;
(7) The trial court violated Basile's rights under the Fifth, Eighth, and Fourteenth Amendments
(a) by submitting to the jury unconstitutionally duplicative statutory aggravators; and
(b) by submitting to the jury Instruction No. 14, which erroneously did not state that (a) the State had to prove the non-statutory aggravators beyond a reasonable doubt; (b) all twelve jurors had to agree on each non-statutory aggravator; and (c) if the jury did not unanimously find beyond a reasonable doubt as to each aggravator, they could not consider that circumstance in returning their verdict of death. Defense counsel was ineffective for failing to object to Instruction No. 14;
(8) The Missouri Supreme Court's proportionality review was inadequate, violating Basile's rights to due process under the Fifth and Fourteenth Amendments;
(9) The Rule 29.15 court's adoption of the State's proposed findings of fact and conclusions of law, rather than conducting an independent review of Basile's claims, violated his rights to due process under the Fifth and Fourteenth Amendments;
(10) The trial court violated Basile's rights under the Fifth, Eighth, and Fourteenth Amendments by denying defense counsel's motion for individual voir dire;
(11) The trial court violated Basile's rights under the Fifth, Eighth, and Fourteenth Amendments by denying defense counsel's motion to empanel a separate penalty phase jury;

*939 (12) The trial court violated Petitioner's rights to due process and to be free from cruel and unusual punishment under the Fifth, Eighth, and Fourteenth Amendments, by submitting Missouri's instruction for proof beyond a reasonable doubt; and
(13) The Rule 29.15 court's refusal to permit Basile to be present at his Rule 29.15 motion hearing violated his rights under the Fifth, Sixth, and Fourteenth Amendments.

A. GROUND ONE: IMPROPER ARGUMENT
In his first ground for relief, Basile claims that the prosecutor violated his rights under the Sixth, Eighth, and Fourteenth Amendments to the Constitution by making improper arguments during guilt phase closing argument, arguing facts not in the record, improperly injecting his personal beliefs, making improper adverse inferences, and attacking defense counsel. Basile also claims that the prosecutor violated Basile's rights under the Sixth, Eighth, and Fourteenth Amendments during the penalty phase closing argument, by making improper, inflammatory arguments, improperly injecting his personal beliefs, and improperly suggesting to the jury that there was a correlation between capital punishment and reduction in crime. Basile further claims that where defense counsel failed to properly object to these arguments, Basile was denied effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments.
Respondent asserts that where the Missouri Supreme Court reviewed Basile's claims for plain error, because defense counsel did not object to the arguments or request a mistrial, this Court should treat the state court's plain error review as enforcing a default and creating a bar to any federal habeas corpus review of these claims. Respondent correctly points out that there is a split of authority within the Eighth Circuit on this issue. In Hornbuckle v. Groose, the Court of Appeals remarked, "There appears to be a decisional split within our Circuit on whether plain-error review by a state appellate court waives procedural default by a habeas petitioner, allowing collateral review by this court." 106 F.3d 253, 257 (8th Cir. 1997). Acknowledging their inability to resolve this intracircuit split, the Hornbuckle panel chose to follow the line of cases holding that when a state court reviews for plain error, a federal habeas court may also review for plain error. Id. (citing Mack v. Caspari, 92 F.3d 637, 641 n. 6 (8th Cir.1996)). In the most recent Eighth Circuit case to consider this question, the panel also declined to find procedurally barred a claim which the Missouri Court of Appeals had reviewed for plain error because of defense counsel's failure to object to the challenged statements. James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999).[2] However, while the James court found the claim in question not procedurally barred, the court rejected petitioner's argument that it should conduct "plain error review de novo" in conducting federal habeas review. Id. The court reasoned as follows:
In the first place, our review of state convictions is limited to federal constitutional errors, in this case, an alleged due process violation.... In the second place, the AEDPA mandates a deferential review of state court decisions. We may not grant habeas relief on a claim that was adjudicated on the merits in state court unless it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).... The summary nature of the Missouri Court of Appeals opinion does not affect this standard of review.
*940 Id. (citations omitted). This Court understands James to mean that even if the state court has reviewed petitioner's claim under a plain error standard, a federal habeas court should conduct its review under the standards set forth in the AEDPA, 28 U.S.C. § 2254(d)(1). Accordingly, where defense counsel did not object to an argument, resulting in the state court's plain error review when that argument was challenged in Basile's direct appeal, this Court shall not find that claim procedurally barred, but shall review the claim under the AEDPA standard.

1. GUILT PHASE CLOSING ARGUMENT

The Missouri Supreme Court divided its analysis of Basile's guilt phase closing argument claim into four parts, which this Court will consider in turn. The Missouri Supreme Court analyzed the first part of this claim as follows:
Basile first argues that a series of statements made by the prosecuting attorney was improper. While no objection was made to some of the statements, he argues that the statements warranted sua sponte relief by the trial court under the plain error doctrine or, in the alternative, that counsel was ineffective in failing to object.
Prosecuting attorney Braun stated the following during closing argument of the guilt phase:
Mr. Basile is in the basement, most likely in this room, locked in.
About 11:40, you heard from Melanie, Jenny McKay comes by and drops off Courtney [one of the DeCaro children]. Courtney gets in the car with the dog and Mr. DeCaro drives off to pick Ricky up from school. In the meantime, the other two children come home and are in the house. In the house with their mother's killer. ...
It was either her or me and I wasn't going back to prison.
How does that relate? Well, DeCaro had him on the hook after he did the first one. He knew if DeCaro got divorced there was a chance, and I'm willing to bet that DeCaro told him, my wife's going to tell on us. You got to go through with this because you're going to go down if I get divorced. My wife knows about this and I told her you were in on it and you are going to go down if I get divorced. My wife knows about this and I told her you were in on it, and you are going to go down. And that's why the sentence makes sense....
He killed the mother of four children after he had been in the house with those children....
Why would he be driving around keeping the property for a while? He didn't know Melanie was coming there at eight o'clock that night. And after nine o'clock any phone calls to Richard DeCaro are coming from the family.
Basile alleges that the above arguments were impermissible because they were not supported by the record. The first three arguments were not objected to, and no claim is made that any of those arguments were preserved for appeal. Objection to the last comment was overruled as a reasonable inference from the evidence.
Basile's conviction will be reversed on plain error for improper argument only if he establishes that the comments had a decisive effect on the jury's determination. State v. Parker, 856 S.W.2d 331, 333 (Mo. banc 1993). The evidence shows or permits an inference that Basile was sought out by Richard DeCaro to both steal vehicles and kill Elizabeth DeCaro, that Richard DeCaro picked Basile up the morning of the murder, that the dog was removed from the DeCaro home at about 11:40 a.m., that Basile did not have his own transportation to the DeCaros', that Basile left the DeCaro home in the DeCaros' Blazer, *941 that there were no signs of forced entry, and that Basile felt the need to kill Elizabeth to avoid her potential disclosure of the insurance fraud scheme and his being sent back to prison.
The prosecuting attorney's comments reflect a reasonable inference from the evidence, which showed that Basile was probably in the house hiding until Elizabeth DeCaro got home. In that space of time, at least two of the DeCaro children came home from their half-day at school to prepare for their trip to the lake. The trial court did not err by failing to sua sponte declare a mistrial after these remarks were made. Contrary to Basile's assertions here, these comments were not "egregious errors, each compounding the other" comparable to the situation in State v. Storey, 901 S.W.2d 886, 902 (Mo. banc 1995).
Basile makes a related claim that the motion court clearly erred by concluding that trial counsel was not ineffective for failing to properly object to prosecutorial statements and preserve those objections for appeal. Counsel cannot be deemed ineffective for failing to make nonmeritorious objections. Six, 805 S.W.2d at 167.
Basile, 942 S.W.2d at 348-50. Pursuant to the AEDPA, the Court must first identify the Supreme Court precedent applicable to Basile's claim of improper argument by the prosecutor. 28 U.S.C. § 2254(d)(1); Long, 184 F.3d 758, 759 (8th Cir.1999). In Darden v. Wainwright, the Supreme Court found that a prosecutor's statements during closing argument were improper. 477 U.S. 168, 180, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). The Court cautioned, however, that "it is not enough the prosecutors' remarks were undesirable or even universally condemned." Id. at 181, 106 S.Ct. 2464 (internal quotations and citations omitted). Instead, "[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id. (internal quotations and citations omitted). The Eighth Circuit has construed the rule set forth in Darden as a two-part test for prosecutorial misconduct: "First, the remarks must have been improper, and second, the remarks must have been so prejudicial as to deprive the defendant of a fair trial." Young v. Bowersox, 161 F.3d 1159, 1162 (8th Cir.1998). Thus, if the reviewing court does not find the remarks to have been improper, the court does not reach the second step of determining whether they deprived the defendant of his constitutional right to due process. U.S. v. Cannon, 88 F.3d 1495, 1502 (8th Cir.1996). If the reviewing court does reach the second step, the court must examine "the totality of the circumstances" in order to determine the effect of the prosecutor's remarks. Walls v. Bowersox, 151 F.3d 827, 836 (8th Cir.1998). The challenged statements, when read in the entire context of the proceedings, must "fundamentally taint the proceedings" to warrant federal habeas relief. Id. at 837 (citing Darden, 477 U.S. at 181, 106 S.Ct. 2464).
In assessing the prejudicial effect of improper remarks by a prosecutor during closing arguments of the guilt phase of a trial, a court considers three factors: (1) the cumulative effect of any misconduct; (2) the strength of the properly admitted evidence; and (3) any curative actions taken by the trial court. U.S. v. Tulk, 171 F.3d 596, 599 (8th Cir.1999). In considering the second factor, the Eighth Circuit "has indicated that an improper argument is less likely to have affected the verdict in a case when the evidence is overwhelming than in a case where the evidence is weak." Cannon, 88 F.3d at 1503. Noting that federal habeas courts have a "less reliable vantage point for gauging the impact of closing argument on the overall fairness of a trial" than did the state trial court, the Eighth Circuit has recently declared that, "Federal habeas relief should only be granted if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge *942 would have sua sponte declared a mistrial." James, 187 F.3d at 869.
Neither party asserts that the trial court's decisions challenged in ground one were "contrary to" clearly established Supreme Court precedent. Accordingly, the Court must determine whether the trial court's decisions were an "unreasonable application" of clearly established Supreme Court precedent. See 2254(d)(1). Basile asserts that the prosecutor improperly argued facts not supported by the record and argued his personal beliefs. In the first and second challenged statements, the prosecutor stated, "Mr. Basile is in the basement, most likely in this room, locked in" (Tr. 2392), and "about 11:40, you heard from Melanie, Jenny McKay comes by and drops off Courtney (DeCaro's daughter). Courtney gets in the car with the dog and Mr. DeCaro drives off to pick Ricky up from school. In the meantime, the other two children come home and are in the house. In the house with their mother's killer." (Tr. 2392.) In the next challenged statement, the prosecutor argued, "He killed the mother of four children after he had been in the house with those children ...." (Tr. 2451.) Defense counsel did not object to any of these statements.
The challenged statements were supported by reasonable inferences derived from the evidence. The family dog was taken out of the home when DeCaro collected Courtney at about 11:40 a.m. People who came by the house observed that the garage door was closed, then up with the Blazer parked inside. Basile was identified as the driver of the same Blazer later that evening. There was evidence that Basile had a key to the van which he intentionally burned for receipt of money from DeCaro. Additionally, Basile delivered objects taken from the DeCaro house to his friends. The Blazer was placed in a garage used only by Basile, where it was disassembled. Basile told others that the police were looking for him, that he had been set up, that he was in "deep shit," and that he had "done the lady." Because the evidence supported the prosecutor's argument, the argument was not improper. See United States v. Robinson, 110 F.3d 1320, 1327 (8th Cir.1997) (as long as prosecutors do not stray from evidence and reasonable inferences from it, they may use colorful and forceful language in arguments to jury)
In the next portion of the challenged argument the prosecutor stated, "It was either her or me and I wasn't going back to prison .... How does that relate? Well, DeCaro had him on the hook after he did the first one. He knew if DeCaro got divorced there was a chance, and I'm willing to bet that DeCaro told him, my wife's going to tell on us. You got to go through with this because you're going to go down if I get divorced. My wife knows about this and I told her you were in on it and you are going to go down. And that's why that sentence makes sense." (Tr. 2400). This statement was also supported by reasonable inferences from the evidence.
Evidence presented at trial indicated that DeCaro hired Basile to take the family van so that DeCaro could make an insurance claim. Basile took the van in the company of another to Cape Girardeau County where he burned it. Elizabeth DeCaro had reported to her sister that DeCaro knew people who would or could blow up a van. (Tr. 1673.) Furthermore, she told Mary Pohlman Marchetto that the reason DeCaro needed to leave the Marchetto party early was probably that he had hired someone to steal the van they were driving that night and that when they arrived home DeCaro had taken items from the van and had parked it in the street, rather than the garage. (Tr. 1727-28) On March 9, 1992, three days after the murder, Basile told his brother, Doug Meyer, that it was him or her and he was not going to jail. (Tr. 2230.)
Again, the prosecuting attorney is permitted to argue to the jury that they are entitled to conclude from the evidence, or reasonable inferences from the evidence, that certain facts have been proved. Robinson, *943 110 F.3d at 1327. Here, the evidence supported inferences that Basile had stolen and burned the van, that Elizabeth knew that DeCaro had had the van stolen, and that Basile had said that it was him or her and he was not going to jail. Accordingly, the Court finds that the challenged argument was not improper.
Finally, Basile challenges the following statement by the prosecutor, "Why would he be driving around keeping the property for a while. He didn't know Melanie was coming there at eight o'clock that night. And after nine o'clock any phone calls to Richard DeCaro are coming from the family." (Tr. 2435.) The trial court properly overruled defense counsel's timely objection to this statement, which was supported by evidence set forth at trial. Elizabeth Burrows, whose exhusband's name is Rick, testified that on March 6, 1992, while in St. Charles County at about 4:30 p.m., she passed a Blazer with a combination of the names Rick and Liz on its license plate and identified Basile as the driver. (Tr.2081-84.) Also, Kathy and Thomas Ortinau saw a vehicle with RIK-LIZ on its license plate on Interstate 270 about 8:00 p.m. on March 6, 1992. (Tr. 2148-49, 2152.) The DeCaro's blazer which was stolen on the day of Elizabeth's murder had RIK-LIZ on its license plates.
Melanie Enklemann, Elizabeth's sister, testified that she and Elizabeth had lunch together on March 6, 1992, at the TWA Training Center where they worked. At lunch, they made plans to meet that evening at the Casa Gallardo restaurant in Bridgeton, Missouri, at 5:00  5:15 p.m. (Tr. 1641.) When Elizabeth failed to appear at the assigned time, Enklemann and a friend began a search for Elizabeth DeCaro which ended inside the DeCaro house where they found her lying stomach down on the floor in front of the sink. (Tr. 1641-46.)
The trial court properly ruled that there was evidentiary support for the reasonable inferences argued by the prosecutor. It was reasonable to conclude that Elizabeth DeCaro's body might not have been discovered until Sunday. Furthermore, it was reasonable to assume that when the body was discovered Richard DeCaro would have been notified and therefore that attempted contact with him would have been foreseeable. The statement in its entirety was reasonable argument and, accordingly, was not improper.
The Missouri Supreme Court analyzed the second part of this claim as follows:
Basile cites three instances where the prosecuting attorney stated personal opinions, which Basile claims constituted plain error or, in the alternative, that counsel was ineffective for failure to object.
The instance in which an objection was made included the following statement by the prosecuting attorney:
Now, what about the dog. The dog is more important than any of us think. The dog barked at strangers, jumped on strangers, was protective of those children. The dog was home in the morning when the kids left and dad wasn't there. Dad shows up to pick Ricky up, and we debated whether to put the children on, but that was the only way we could prove this. [Tr. 2407.]
At that point, an objection was interposed that the prosecuting attorney was relying on "personal hardship." No motion for mistrial was made. The prosecuting attorney immediately withdrew the comment. The retraction was sufficient to correct any impropriety and overcome a claim that a motion for mistrial should have been made and sustained. State v. Turnbull, 403 S.W.2d 570, 573 (Mo.1966). This comment, alone or in conjunction with others, did not have the pervasive prejudicial effect necessary to require the grant of a mistrial sua sponte. State v. Weaver, 912 S.W.2d 499, 512 (Mo. banc 1995), cert. denied, 519 U.S. 856, 117 S.Ct. 153, 136 *944 L.Ed.2d 98 (1996). Counsel will not be deemed ineffective for failing to make a motion which would properly be denied. The second and third instances of alleged "injection of personal opinion" by the prosecuting attorney were the following:
Now, on Saturday sometime he tells Doug that he took his gun back to his father. I think that's a lie. He threw the gun out. He was looking for a throw away. Here's a man who wears gloves so there is [sic] no fingerprints. He's not going to keep the murder weapon around.... [Tr. 2398.]
I think you have, if you think of all that evidence, if you weigh all the circumstantial evidence, if you look at the direct evidence, the eyewitness testimony, the testimony and Borak and Meyer and Wells and Sue Jenkins, they are not lying, they are telling you the truth. [Tr. 2409.]
No objection was made. Most of the arguments were at least supported by inferences from evidence in the record. These arguments were certainly not so egregious as to be outcome determinative and, as such, do not constitute plain error. Storey, 901 S.W.2d at 902. The comment regarding the gun being thrown away, even if objectionable, was not reasonably likely to infect the proceeding in such a manner as to undermine confidence in the outcome. Thus, there was no prejudice from counsel's failure to object.
Basile, 942 S.W.2d at 350. Basile contends that in these statements the prosecutor improperly injected his personal beliefs into his argument. As to the first statement, in which the prosecutor commented upon his ambivalence about requiring Ricky DeCaro to testify, the Court finds that even if this statement was improper, the prosecuting attorney's immediate withdrawal of the comment was sufficiently curative to eliminate any possibility of prejudice to Basile. The prosecutor's statements that he thought Basile had lied about taking his gun back to his father and that witnesses Borak, Meyer, Wells, and Jenkins were telling the truth constituted improper vouching. Improper vouching includes statements in which the government "(1) refers to facts outside the record or implies that the veracity of a witness is supported by outside facts that are unavailable to the jury; (2) implies a guarantee of truthfulness; or (3) expresses a personal opinion about the credibility of a witness." U.S. v. Benitez-Meraz, 161 F.3d 1163, 1167 (8th Cir.1998). Here, the prosecutor directly expressed his personal opinion about the credibility of both Basile and four witnesses. See id. (prosecutor's statements not improper because he did not imply that witness was telling the truth). However, while the Eighth Circuit has expressed its lack of tolerance for comments on witnesses' credibility, such comments do not require reversal unless "the jury verdict reasonably could have been affected by the improper comment." U.S. v. McMurray, 20 F.3d 831, 834, n. 3 (8th Cir.1994). In light of the extensive evidence of Basile's guilt, which the Court sets forth below, the Court does not believe that these comments reasonably could have affected the jury's verdict.
Evidence submitted at trial showed that approximately five weeks before Elizabeth's death, DeCaro had struck her with the front of the family van in the residential garage, with such force that it forced her body through the garage wall into the interior of the living quarters. On direct examination by the prosecutor, Melanie Enklemann, Elizabeth's sister, testified:
Q. Now, when she got that bruise, do you know if Rick tried to help her?
A. What he did is he  after he ran it through the wall, he ran out of the car and he ran to the front door, which I pointed out, and he went outside. And Ricky was up, and he yelled at Ricky, you go back to bed, you stay in your room. And then he ran into the kitchen and he dialed  started to dial 911. At this time Elizabeth says, you know, I'm *945 trying to get out of this, you know, I finally dig my way out of this, and she walks in the kitchen and says, "What are you trying to do, kill me?" (Tr. 1653-55.)
Witness testimony also connected Basile with DeCaro, indicating that DeCaro first hired Basile to steal and destroy his van, and then to kill his wife. James Torregrossa was acquainted with Richard DeCaro through the Gold's Gym where both were members. (Tr. 1694.) When Torregrossa took a car to the service station where DeCaro worked, DeCaro asked him if he knew anyone who could take the van off his hands and then if he knew anyone who could take care of someone for him or "put a hit on somebody." (Tr. 1697-69.)
Craig Wells was employed at the Old Orchard Standard Station by Dan and Rick DeCaro for about seven years. (Tr. 1732.) He met Basile through Doug Meyer, Basile's half-brother. (Tr. 1735.) In January, 1992, Rick DeCaro asked Wells if he knew anyone who could take a vehicle off his hands. Wells introduced DeCaro to Basile. (Tr. 1739.) Wells provided transportation for Basile and arranged a "first meeting" between DeCaro and Basile in which Basile got out of Wells's car into the DeCaros' van. (Tr. 1740, 1743.) Wells testified that after the meeting, Basile reported to Wells that DeCaro had not only asked him to steal the van, but also to "do a hit" on DeCaro's wife. When Wells told Basile that he could not kill Elizabeth because she was a friend of his, Basile stated that he would not do it but also that the money  around fifteen thousand dollars  was almost too good to pass up. (Tr. 1744.) On February 8, 1992, Basile told Wells that he had stolen the van, taken it to Cape Girardeau, and burned it. (Tr. 1749.) Basile then called Wells on Saturday morning, March 7, 1992, after Elizabeth's death the day before, and told him, "It looks like I've gotten set up." (Tr. 1760-61.) Wells talked to DeCaro after the murder, advising him that Basile had been arrested, that Elizabeth's Chevrolet Blazer was located in Doug Meyer's garage, and that Wells knew about the "first meeting" between Basile and DeCaro when DeCaro asked Basile to do a hit on his wife. DeCaro's response was, "I never met Dan Basile." (Tr. 1764.)
Susan Marie Jenkins, who had known Basile since junior high school, also testified that Basile had stolen and burned DeCaro's van. She testified that on Friday, February 7, 1992, she drove Basile to four different locations in North St. Louis County, because Basile was looking for a garage for a van. Jenkins recounted that Basile offered a man at one of the houses one hundred fifty dollars for the use of a garage for a van, but the man said no. (Tr. 1806, 1809-10.) Jenkins further testified that when they returned to the home of Basile's friend JoAnn,[3] Basile stated "that he had a job to do for a friend, that it was an insurance scam. He had to take a van and steal it, get rid of it. He had keys to the van. He had handwritten instructions or directions from the owner of the van to the home. He had already been paid to take this van. He had been paid two hundred dollars." (Tr. 1811.) Jenkins took Basile to the van at the DeCaro home where he took possession of it and drove it to Jackson, Missouri, where his sister lived. Jenkins followed him in her vehicle. He burned the van and they returned to St. Louis County. After hearing that Elizabeth DeCaro had been murdered, she cooperated with the police. (Tr. 1809-1836.)
There were many other people who also could connect Basile with Rick DeCaro. Roberta Paulus testified that in the last week of February or first week of March, 1992, she stabled her six horses in South County Stables where Basile was employed. During that time period, she identified DeCaro as having come to the stable to meet with Basile. She identified DeCaro *946 from a photograph as the person who approached her looking for Basile. (Tr. 1864-68.) Edward Giegerich was an instructor at Vatterott College where Basile was a student in an electricity class. Because they both lived in Fenton, Giegerich provided Basile with transportation to and from class. Giegerich testified as follows:
Q. So he made a comment to you that he was going to do an insurance job for someone?
A. He didn't say that he was necessarily going to do it. He said that he had an insurance job and that someone wanted him to take care of his wife.
Jeffrey Niehaus testified he had known Basile since junior high school. Basile called him and mentioned a pre-setup insurance scam in which he would have a key to the van. (Tr.1913-14.) Basile stated that if he could not find a garage he would take the van to southeast Missouri. (Tr.1914.) Niehaus received another call from Basile who was looking for a "throwaway" handgun about one week before March 6. He said he was to steal a GMC Jimmy in the same setup as the van. (Tr. 1915.) Niehaus received another call around 6:30 or 7:00 p.m. on March 6 from which he concluded that Basile "sounded pretty shook up," saying things went wrong and were not "supposed to happen this way." (Tr.1916.) He said he was to get a lot of money out of it, "in the double digits." (Tr.1917.)
Kenneth Robinson saw Basile two times in January and March, 1992. (Tr.1936.) The first occasion was at the archery range when Basile told him that his brother knew someone who ran an Amoco who wanted his van to disappear for an insurance claim and wanted his wife to go with it. (Tr.1937.) Robinson replied that if Basile needed money he should pick up aluminum cans on the side of the highway. (Tr.1938.) Robinson further testified as follows:
Q. After March 6, 1992, when Elizabeth DeCaro was murdered, did you have occasion to meet Dan Basile in person again?
A. Oh, yeah, it was kind of scary.
Q. When was that?
A. It was 2:15 in the morning. As I was trying to say before, he showed up at my door. I was sleeping.
Q. And what, if anything did he say?
A. I opened the door. I was standing there in my underwear, kind of bleary. He says, "Can I come in? Can I come in?" I said, "Yeah. What's wrong?" I recognized him and said "Yeah, what's wrong?" He came in the door, sat on the floor. I said, "What's the matter?" He said, his exact words were "I'm in deep shit." I said, "What are you talking about?"
A. He said they think  "They're after me." I said, "Who's after you?" He said "The cops." I said, "Oh, man. What did you do?" He had said, "They think I did the van and the lady." I said, "Oh, you have got to get out of my house. I can't have no trouble. I got a kid sleeping here...." (Tr.1942, 1944.)
Lt. Patrick D. McCarrick testified that the disassembled DeCaro Blazer was located in a garage at 122 Samarra Estates Drive, Fenton, Missouri. (Tr.2059.) He described a photo showing the frame and axles and wheels, pieces of the fiberglass body and the engine and transmission located near one end of the garage. (Tr. 2060.) At the same location, he discovered a portable stereo unit described as missing from the DeCaro residence. (Tr.2064-65.)
As described supra, both Elizabeth Burrows and Kathy and Thomas Ortinau saw a blazer with RIK-LIZ license plates while driving in St. Charles County and on Interstate 270, respectively. (Tr.2081-84, 2148-49, 2152.) Burrows identified Basile as the driver of the vehicle.
Richard Borak testified that Basile gave him a stereo identified as missing from the DeCaro home. (Tr.2092, 2094-95.) He testified that Basile told him, "I did this lady." (Tr.2096.)
*947 Douglas Meyer, Basile's half brother testified that he first saw the Blazer during the week of March 2-6, 1992, when it pulled up at the South County Stables where he and Basile were doing electrical work. (Tr. 2164-65.) Basile talked to the man who got out of the vehicle. Meyer identified this man as Richard DeCaro. (Tr. 2166-67). After DeCaro departed, Basile had money which he did not have before, and he told Meyer he got it from the visitor. On the day of the murder, March 6, 1992, at 7:00 or 7:30 p.m., Meyer had a call from Basile who wanted to borrow a garage to work on his vehicle. Meyer did not know that Basile was going to park the Blazer involved in the murder in the garage. (Tr. 2175.) At about 10:30 p.m., Basile went by Meyer's house and the two of them went to an establishment called "Family Affair" for a few drinks. (Tr. 2176.) On Monday, March 9, Meyer went to the garage and found a dismantled Blazer inside. Basile had been the only one working inside the garage. (Tr. 2225-26). Basile told him it was the insurance job he was doing. (Tr. 2226, 27.) Basile also told Meyer it was him or her and he was not going back to jail. Basile told Meyer that the Blazer belonged to the DeCaros and that Richard DeCaro had given him the keys to it. (Tr. 2230, 2235.) Meyer told Basile that he was going to turn him in and contacted the police. (Tr. 2233.)
The Court believes that the properly admitted evidence at trial amply supported the jury's guilty verdict. Considering the totality of the circumstances of the proceedings, the Court finds that the strength of the evidence against Basile negates any possibility that the jury's verdict reasonably was affected by the prosecutor's improper statements.
The Missouri Supreme Court analyzed the third part of this claim as follows:
Basile argues that the prosecuting attorney was permitted to make improper adverse inference arguments from defendant's failure to call his father, Jack Basile, to testify. The specific arguments were as follows:
Now, we didn't have Jack Basile here to testify, his dad. They could call him if they want, it's his family. Neither one of us called him. The state has an ethical obligation if we call a witness  .... [Tr. 2405.]
If they wanted you to hear from Jack Basile they could have got him here. They didn't bring him here.... [Tr. 2407.]
Now, we already talked about some of the witnesses not here, Gayle Dorman, Desi, his sister, they are available as much to the defense as they are  [Tr. 2442.]
Basile's lawyer interrupted to object to the above statements and to move for a mistrial. The motions and objections were overruled. Adverse inferences for failure to call witnesses are permissible if the witness is peculiarly available to the defendant, and a witness is said to be peculiarly available if he or she is one who would be logically expected to testify in a defendant's favor, such as a friend or relative. State v. Neil, 869 S.W.2d 734, 739 (Mo. banc 1994). In this case, the State was entitled to argue the adverse inference as to defendant's father and sister.
As to Gayle Dorman, a girlfriend of defendant's foster brother, an adverse inference argument would have been impermissible. However, the State did not make an adverse inference argument as to her. The prosecuting attorney, prior to being interrupted, only indicated that Basile's sister and Ms. Dorman were equally available to both parties. The State never completed the statement regarding what adverse inferences might be drawn from Gail Dorman's failure to testify and, therefore, no prejudice resulted.
Defendant also alleges that the prosecutor improperly argued in response to a *948 defense counsel statement that she was not Perry Mason, as follows: "As I recall, all of Perry Mason's clients were not guilty, and you didn't hear her say that Dan didn't do it." [Tr. 2432.] Basile's objection to this statement was sustained. He now claims that this statement warranted a mistrial because it shifted the burden of proof and compromised the attorney/client privilege. The fact that the objection was sustained was sufficient to correct any error in the comment. State v. Shurn, 866 S.W.2d 447, 461 (Mo. banc 1993), cert. denied, 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). Defendant fails to establish that he was entitled to a mistrial, therefore counsel was not ineffective in failing to make such a motion.
Basile, 942 S.W.2d at 350-51. Basile contends that in the first three statements the prosecutor was allowed to make improper adverse inferences. In U.S. v. Cook, 771 F.2d 378 (8th Cir.1985), petitioner asserted that he had been prejudiced by the prosecutor's urging the jury to draw an adverse inference from the fact that his fiancee did not testify on his behalf. The Eighth Circuit stated:
As a general matter, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would have been unfavorable. But such a presumption is to be cautiously applied, and where the witness was apparently equally available to both sides, we seriously doubt whether any presumption should flow from the failure of either party to call such witness. In the present case, there was no showing whatsoever on the part of the government that it was peculiarly within [petitioner's] power to produce [his fiancee] as a witness; it therefore was clearly improper for the prosecutor to argue to the jury that it may draw any adverse inference.
Id. 382-83 (internal quotations and citations omitted). The court went on to find that the compelling evidence of petitioner's guilt precluded the court's finding that these comments cast doubt upon the jury's verdict. Id. at 383. In this case, the Government made no showing that either Desi, Basile's sister, or Jack, his father, were peculiarly available to Basile, other than by pointing out that they were members of his family. See U.S. v. Hoenscheidt, 7 F.3d 1528, 1531 (10th Cir.1993) ("A witness may be peculiarly available to the other side if the other side alone has physical control over the witness or if the witness would be hostile to or biased against the calling party.") Furthermore, Basile argues that his father had told the police that he had not given his son a gun, as Basile claimed, and that the two men did not have a good relationship. The Court believes that while the prosecutor's references to Desi were not improper, his suggestion that the jury draw an adverse inference from Basile's not calling his father to testify on his behalf may have been improper because it appears that Jack Basile was not peculiarly available to Basile. Even if these statements regarding Jack Basile were improper, however, the Court finds that these remarks "urging the jury to draw an additional inculpatory inference from the absence of a single witness" do not cast doubt upon the jury's verdict. Cook, 771 F.2d at 383.
Basile further asserts that the prosecutor's "Perry Mason" remark impermissibly violated his right against self-incrimination and attacked defense counsel. The Court finds that this statement was improper because the prosecutor attempted to shift the burden of proof from the Government to Basile. See Clark v. Wood, 823 F.2d 1241, 1250 (8th Cir.1987) (finding improper prosecutor's attempt to shift the burden of proof to defendant by suggesting that he should have rebutted the state's medical evidence). The Court disagrees with Basile's assertion that this remark violated his right against self-incrimination, however. While the prosecutor *949 improperly indicated that Basile's lawyer should have told the jury that Basile was innocent, he did not suggest in any way that Basile should have testified in his own defense. Moreover, the Court believes that the prosecutor's statement, while improper, did not reasonably affect the outcome of the trial, in light of the overwhelming evidence of Basile's guilt.
The Missouri Supreme Court analyzed the fourth part of this claim as follows:
Basile claims plain error occurred because the prosecuting attorney was allowed to personally attack and denigrate defense counsel. The relevant excerpts from the transcript read as follows:
[PROSECUTOR]: Self-defense, protection, bull. And think of the physical evidence you heard from Mr. Buel. He says the bullet is a little defective, like something is wrong with the gun. Like the kind of gun 
[DEFENSE COUNSEL]: Objection, he indicated that the mutilation was caused by hitting bone. That was his testimony. This is a misstatement of facts.
[PROSECUTOR]: Now it's open field on my argument. She will object all the way through.
[THE COURT]: The objection is overruled....
[DEFENSE COUNSEL] [interrupting State's closing argument]: This is misleading. There were payments made by Richard DeCaro.
[PROSECUTOR]: I will object. I didn't object to her closing 
[THE COURT]: I will overrule the objection.
[PROSECUTOR]: Either she wants you to hear my argument or she doesn't. [Tr. 2436.]
The defendant compares this case to those in which the State argued that defense counsel suborned perjury by fabricating evidence, represented criminals "time and time again," or where the State argued that defense counsel "browbeat witnesses." State v. Mosier, 102 S.W.2d 620, 626 (Mo.1937); State v. Spencer, 307 S.W.2d 440, 446-47 (Mo.1957). None of those sorts of statements occurred here. Not every statement of frustration with opposing counsel in response to nonmeritorious objections results in plain error. Neither are such comments clearly an attack on the integrity of opposing counsel. A criminal trial is an adversarial process. Occasional outbursts are expected, but not necessarily approved. The appropriate action in such cases is best left to the sound discretion of the trial judge. Appellate courts will interfere only where there is a reasonable likelihood that it affected the outcome of the case. Contrary to Basile's allegations, here the comments were not "highly improper" attacks on the integrity of counsel so as to suggest that there was a miscarriage of justice. This point is denied.
Basile, 942 S.W.2d at 351-52. Basile contends that in these statements the prosecutor improperly attacked defense counsel's credibility. While "[p]rosecutors should refrain from personal attacks on defense counsel," U.S. v. O'Connell, 841 F.2d 1408, 1428 (8th Cir.1988), "inappropriate prosecutorial comments, standing alone, do not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding. Instead, ... the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." U.S. v. Young, 470 U.S. 1, 11-12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (quoted in U.S. v. Nelson, 988 F.2d 798, 807 (8th Cir.1993)). The Court finds that the prosecutor's statements about defense counsel were not improper. While not altogether civil, these statements did not rise to the level of an attack on defense counsel. For the foregoing reasons and having found no unreasonable application of Supreme Court precedent by the state *950 court, the Court denies Basile's claims in this part of ground one.

2. PENALTY PHASE CLOSING ARGUMENT

The Missouri Supreme Court divided its analysis of Basile's penalty phase closing argument claim into five parts, which this Court will consider in turn. The Missouri Supreme Court analyzed the first part of this claim as follows:
Basile claims that the prosecutor personalized the argument when he said, "And if Elizabeth were here today, I'm sure she would tell you  because she would care for a person like Danny  I'm sure she would tell you to give him a fair trial in this portion of the case." [Tr. 2677.] Personalized arguments are improper when they suggest that should the defendant be acquitted, the jurors or their families would be in personal danger. State v. Copeland, 928 S.W.2d 828, 842 (Mo. banc 1996), cert. denied, 519 U.S. 1126, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997). The argument cited does not qualify as "personalizing" the argument. There was no error.
Basile also claims that the following was improper personalization, although no objection was interposed to the argument:
Now, we all welcome getting home. Everyone welcomes getting home. It's probably more poignant for you right now, and the security when you walk in the door, kick off your shoes, let your hair down, I'm home. Think about Elizabeth's last time coming home. Sad, children gone out of town with the husband. Never been home alone before. But walking into the sanctuary, to that place where we all rest. Walking in, going up, getting a drink of water at the sink, and suddenly a hand on her back. [Tr. 2704.]
Nothing said in the above portion of the closing argument in the penalty phase indicates that the jurors or their families were in any personal danger. This claim of error is denied.
Basile, 942 S.W.2d at 352. As in the preceding improper argument claim, the Supreme Court precedent applicable to Basile's penalty phase improper argument claim is Darden, as interpreted in the Eighth Circuit's two-part prosecutorial misconduct test in Young, 161 F.3d at 1162. The Eighth Circuit has set forth the following factors for a court's determination of a claim of improper closing argument at the penalty phase of a trial:
(1) measuring the type of prejudice that arose from the argument; (2) examining what defense counsel did in counsel's argument to minimize the prejudice; (3) reviewing jury instructions to see if the jury was properly instructed; and (4) determining if there is a reasonable probability that the outcome of the sentencing phase would have been different, taking into account all of the aggravating circumstances.
Preston v. Delo, 100 F.3d 596, 602 (8th Cir.1996). However, upon determining that a claim of prosecutorial misconduct by improper penalty phase closing argument did not "present a close question," the Eighth Circuit declined to assess the claim under each factor but turned, instead, directly to the last factor: "Rather, turning to the ultimate question, we conclude that there is no reasonable probability that this statement more than minimally affected the outcome of the sentencing phase...." Preston, 100 F.3d at 602.
Because neither party asserts that the trial court's decisions challenged in ground one were "contrary to" clearly established Supreme Court precedent, the Court must determine whether the trial court's decisions were an "unreasonable application" of clearly established Supreme Court precedent. See 2254(d)(1). Basile contends that in these statements the prosecutor argued irrelevant and immaterial facts with the sole purpose of inflaming the jury.
The prosecutor stated, "And if Elizabeth were here today, I'm sure she would tell *951 you  because she would care for a person like Danny  I'm sure she would tell you to give him a fair trial in this portion of the case." An objection was made and sustained to the following prosecutorial argument.
MR. BRAUN: Now, we all welcome getting home. Everyone welcomes getting home. It's probably more poignant for you right now, and the security when you walk in the door, kick off your shoes, let you hair down, I'm home.
Think about Elizabeth's last time coming home. Sad, children gone out of town with the husband. Never been home alone before. But walking into the sanctuary, to that place where we all rest. Walking in, going up, getting a drink of water at the sink and suddenly a hand on her back.
MR. DAVIS: Objection, Your Honor, there is no evidence to support this. This is improper argument.
THE COURT: I will sustain the objection. (Tr. 2704.)
The first statement of the prosecutor was not improper. The trial court granted the relief requested by defense counsel after the second statement. In any event, there is no reasonable probability that the outcome of the sentencing phase would have been different, taking into account the wealth of evidence of Basile's guilt. Preston, 100 F.3d at 602.
The Missouri Supreme Court analyzed the second part of this claim as follows:
Basile next asserts the following statements made during the penalty phase argument constitute plain error:
Just imagine the terror when she was aware of this person behind her, this person grabbing, even if it's just for a few seconds of terror that rippled through her body and racked her. And then what? Cold steal [sic], searing heat and eternity. From a man who says I'm not someone to fuck with anymore a year earlier....
He had to get close enough to put two bullets in the back of her head. She smelt the stench of evil. She felt the sweat of evil. Elizabeth DeCaro died in his grimy hands. Either he was holding her up when he shot her or had her down, which is worse, on her knees or laying on the ground and as he bent over her and put two shots in her. Mr. Evil watched her die. You know the difference between this and this is Mr. Evil. No amount of child abuse justifies this. [Tr. 2705.]
The references to Mr. Evil could be deemed inflammatory if they were unrelated to relevant evidence that came in during the punishment phase. Basile wrote to his ex-girlfriend, Lisa Carr, on stationery imprinted with a Satanic figure around which was written, "The Desk of Evil." The statements, including "Mr. Evil," properly went to defendant's view of his own character and was appropriate in considering punishment. State v. Kinder, 942 S.W.2d 313, 333 (1996). These arguments were supported by the evidence or were reasonable inferences from the evidence. Failure to object or to make the proper objections to these nonmeritorious claims does not constitute ineffective assistance of counsel.
Basile, 942 S.W.2d at 352. Basile contends that in these statements the prosecutor's statements were inflammatory and included improper personalization. The Court finds that these statements were not improper because they constituted reasonable inferences from the evidence presented at trial. See Robinson, 110 F.3d at 1327. As the Missouri Supreme Court explained, calling Basile "Mr. Evil" was a reference to his chosen moniker. Furthermore, the prosecutor's imagination of Elizabeth's last moments was reasonably derived from the medical evidence of how she died.
The Missouri Supreme Court analyzed the third part of this claim as follows:

*952 At one point, the prosecuting attorney stated that the murder of Elizabeth DeCaro was "one of the most vicious, coldblooded, premeditated murders that this county has ever seen." [Tr. 2686.] Though this issue was not preserved for appeal, Basile claims that the argument is identical to the one condemned by this Court in Storey, 901 S.W.2d at 900, where the prosecuting attorney argued that the murder was "about the most brutal slaying in the history of the county." Though this Court does not approve of the comment, it was not as prejudicial as the comment in Storey because, here, it was not combined with other "egregiously" improper arguments. Here the statement merely argues a matter of common knowledge that killing someone in their own home by shooting them twice in the back of the head after waiting all day in the basement is an extremely unusual and brutal crime. State v. Sturrs, 51 S.W.2d 45, 46 (Mo.1932); State v. Skelton, 828 S.W.2d 735, 737 (Mo.App.1992). There was no plain error. Moreover, the comment does not indicate that counsel's failure to object was conduct that "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).
Basile, 942 S.W.2d at 352-53. Basile contends that by stating that Basile had committed "one of the most vicious, cold-blooded, premeditated murders that this county has ever seen" the prosecutor impermissibly injected his personal beliefs. The Court agrees that this statement was improper. "It invited the jury to rely on the prosecutor's personal opinion about the relative coldness of this crime and compared the circumstances of this crime to others crimes that were not in the record." Young, 161 F.3d at 1162. In Young, the Eighth Circuit found that prosecutor's statement that the defendant's crime was "disgusting and ... as cold as anything I've ever seen" was "clearly improper" but, taking into account the aggravating and mitigating circumstances found "no probability that the sentence would have been any different." Id. Pointing out that the prosecutor made this statement as part of his argument that the crime involved depravity of mind, an aggravating circumstance, the court reasoned that "[t]here was overwhelming evidence from which the jury could have found the presence of this aggravating circumstance aside from the prosecutor's personal opinion that it was as cold as anything he had ever seen." Id.
While the prosecutor's statement in Basile's case did not directly address an aggravating circumstance, he made this statement after focusing his closing argument on the three hours that Basile waited in the DeCaro home, intending to kill Elizabeth when she came home. This Court believes that, as in Young, the jury members in this case had before them compelling evidence from which they could have drawn their own conclusion that Elizabeth's murder was especially deliberate and cold-blooded. Additionally, the jury found two aggravating circumstances relating to the fact that Basile received payment to kill Elizabeth. Moreover, this statement came at the end of an otherwise entirely proper closing argument, in which the prosecutor concentrated on walking the jury through the instructions, with emphasize on supporting evidence, undermining Basile's presentation of mitigating circumstances by arguing that Basile made a deliberate choice to kill, and asserting that only a sentence of death would punish Basile, who had stated in a letter that he was not afraid of prison. See Blair v. Armontrout, 916 F.2d 1310, 1325 (8th Cir. 1990) (contrasting case with multiple egregiously improper statements in penalty phase closing argument with case in which the improper argument "comprised only a brief portion of the prosecutor's closing argument," and finding in the latter case that the trial was not rendered fundamentally *953 unfair). Within the context of the prosecutor's entire penalty phase closing argument and in view of the evidence presented and the jury's findings, the Court finds that there is no reasonable possibility that Basile's sentence would have been different had the prosecutor not made this statement.
The Missouri Supreme Court analyzed the fourth part of this claim as follows:
Though not objected to, Basile complains of two additional arguments not supported by evidence:
...[t]he lady on the porch, the milkman, all the people in the neighborhood who were in danger when they came by here, .... [Tr. 2681.]
He endangered the lives of children, innocent children, he killed their mother, he endangered the lives of the people that came by that house. [Tr. 2703-04.]
These are proper references based upon the evidence that Basile was in the house waiting for Elizabeth to come home. There was also evidence that at least two of the children were home part of the time and that visitors came by the house. Indeed, Elizabeth DeCaro's sister and a friend ultimately entered the house. Thus, the arguments that defendant's conduct put others at risk is a proper inference from the evidence and was relevant in assessing punishment. Assertions of ineffective assistance of counsel and plain error on this basis are denied.
Basile, 942 S.W.2d at 353. Basile contends that in these statements the prosecutor impermissibly injected his personal beliefs. The Court finds that these statements were reasonable inferences from the evidence that visitors stopped by and two of the DeCaro children were in the house during the time that Basile was waiting for Elizabeth to come home alone. Accordingly, they were not improper. Robinson, 110 F.3d at 1327.
The Missouri Supreme Court analyzed the fifth part of this claim as follows:
During the punishment phase, the prosecutor reviewed the numerous probations that Basile had been granted in the past, and then said:
How many more chances are we going to give him?
Have a right to be upset with the system? You bet. There are plenty of us, and I know we are part of the system  [Tr. 2701.]
The defendant then interposed an objection, which was sustained. Still later, the prosecuting attorney said, "How do we stop the violence unless we make the killers responsible for their acts[?] This is why we have the death penalty." [Tr. 2703.] No objection was interposed at that point.
All of the above are valid pleas for strict law enforcement, which are permissible in the penalty phase argument. State v. Richardson, 923 S.W.2d 301, 322 (Mo. banc 1996), cert. denied, 519 U.S. 972, 117 S.Ct. 403, 136 L.Ed.2d 317 (1996); State v. Newlon, 627 S.W.2d 606, 618 (Mo. banc 1982), cert. denied, 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982); rehearing denied, 459 U.S. 1024, 103 S.Ct. 391, 74 L.Ed.2d 520 (1982). The argument was not erroneous and, therefore, counsel will not be deemed ineffective for failing to object.
Basile, 942 S.W.2d at 353. Basile contends that in these statements the prosecutor again impermissibly injected his personal beliefs. In the Court's view, these statements were permissible appeals to the jury to act for the community by strictly enforcing its laws. See Six v. Delo, 94 F.3d 469, 477 (8th Cir.1996) (finding no improper comment where "prosecutor did not make a personal appeal to the jury's parental responsibilities to protect their children from crime, but was speaking figuratively about society as a whole and was asking the jury to send a message that anyone who rapes, robs, kidnaps, and kills children would be sentenced to death"); *954 Bivens v. Wyrick, 640 F.2d 179, 181 (8th Cir.1981) (prosecutor's general statements concerning the jury's duty to prevent crime were not improper); Jackson v. Johnson, 194 F.3d 641, 655 (5th Cir.1999) (not improper for prosecutor to "appeal to jury to act as the conscience of the community" or "to emphasize the importance of deterrence"). The Court finds that these statements were not improper. Having found no unreasonable application of Supreme Court precedent by the state court, the Court denies Basile's claims in this second part of ground one.

3. INEFFECTIVE ASSISTANCE OF COUNSEL

Basile asserts that where his defense counsel failed to object to the prosecutor's improper argument, his counsel was ineffective, in violation of Basile's rights under the Fifth, Sixth, and Fourteenth Amendments. Basile further asserts that where defense counsel's objection was overruled, defense counsel was ineffective by failing to request a mistrial. In assessing Basile's ineffective assistance of counsel claim, the Court looks to Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which is "clearly established" law for the purposes of the AEDPA. Garcia Delgado v. Lewis, 181 F.3d 1087, 1092 (9th Cir.1999).
To prevail on an ineffective assistance on counsel claim, Basile must show both "(1) that his attorney's performance was deficient, falling below professional standards of competence; and (2) that the deficient performance prejudiced his defense." Blankenship v. United States, 159 F.3d 336, 338 (8th Cir.1998) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In assessing the attorney's performance, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy'" Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). In determining whether the defense suffered prejudice, the court considers whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. Thus, when a defendant challenges a conviction, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695, 104 S.Ct. 2052.
The Supreme Court has stressed that the Sixth Amendment's provision for the right to assistance of counsel is meant to ensure that a trial is fair. "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." Id. at 685, 104 S.Ct. 2052. Thus, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686, 104 S.Ct. 2052. In making this assessment, courts are cautioned that their scrutiny of an attorney's performance must be "highly deferential," making efforts "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689, 104 S.Ct. 2052.
In the foregoing analyses of Basile's claims of prosecutorial misconduct in the prosecutor's guilt and penalty phase closing arguments, this Court has found that the challenged statements either were not improper, or if they were improper, were not so prejudicial as to deprive the defendant of a fair trial. Young, 161 F.3d at 1162. Accordingly, the Court finds that in *955 failing to object to statements or to request a mistrial based on those statements, Basile's counsel was not ineffective. Defense counsel's performance was neither deficient nor prejudicial by counsel's failure to object to statements which were not ultimately prejudicial to the outcome of Basile's trial. Therefore, the Court concludes that the state court's application of Strickland to Basile's ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of established Supreme Court precedent. For the foregoing reasons, the Court will deny relief based on Basile's claims in ground one.

B. GROUND TWO: IMPROPER VOIR DIRE
In his second ground for relief, Basile asserts that the prosecutor violated his rights under the Sixth and Fourteenth Amendments by making inflammatory statements to prospective venirepersons, personally attacking defense counsel, and injecting his personal opinion. Basile further claims that defense counsel's failure to request a mistrial on the basis of these improper statements violated Basile's right to effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments.
The Missouri Supreme Court considered this claim as follows:
Basile asserts the trial court erred in failing to declare a mistrial and in overruling defense objections to prosecutorial comments and actions during voir dire, presentation of guilt phase evidence, and penalty phase evidence. Basile claims the motion court erred in denying relief based upon allegations of ineffective assistance of counsel when counsel failed to object to the prosecuting attorney's comments and actions. In the absence of a manifest injustice or a miscarriage of justice, the plain error rule will not be used to justify review of points not preserved for appeal. State v. Tokar, 918 S.W.2d 753, 769 (Mo. banc), cert. denied, 519 U.S. 933, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996); State v. McMillin, 783 S.W.2d 82, 98 (Mo. banc), cert. denied, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). In addition, a Rule 29.15 motion is not to be used as a substitute for an appeal. Rule 29.15(d); State v. Twenter, 818 S.W.2d 628, 641 (Mo. banc 1991).
The prosecuting attorney said the following to venireperson Kathy Gruenefeld during voir dire:
This is a case in which it is alleged that the Defendant murdered the mother of four children. Obviously we are interested in having people from all walks of life and backgrounds on the jury including mother's [sic]. I mean, the fact that you are a mother could create a hardship here but do you see how we would want somebody with your background on the jury? [Tr. 80.]
A defense objection to the form of the question was sustained. There was no request for a mistrial. Gruenefeld was not impaneled for Basile's trial. Thus, manifest injustice is not discernible. Neither is prejudice shown so as to establish ineffective assistance of counsel. Basile again argues that defense counsel was personally attacked by the prosecution. The first instance was when the prosecuting attorney objected to defense voir dire questions, calling them "contrived." [Tr. 706.] The statement was part of an objection to defense counsel asking what potential jurors thought about the death penalty in first degree murder cases. After extended argument at the bench, the objection was overruled.
The second instance of alleged personal attacks on defense counsel occurred when the prosecuting attorney told venirepersons, "[T]he State doesn't pick its witnesses. The Defendant might pick his...." [Tr. 1340.] The court sustained the defense objection to this statement. Then, at the request of defendant, the court directed the venire members to disregard the statement. *956 That was sufficient to correct any suggestion of impropriety on the part of defense counsel. In neither instance was the prosecution permitted to degrade defense counsel through "highly improper" comments. See Spencer, 307 S.W.2d at 446-47; Weaver, 912 S.W.2d at 514. There was no manifest injustice in the trial court failing to sua sponte grant a mistrial.
Basile claims that the prosecutor injected his personal opinion about the case during voir dire when he said, "He committed a very terrible murder." [Tr. 872.] In context, it is apparent that the prosecuting attorney was hypothesizing a jury's finding of guilt of "a very terrible murder" as a predicate to considering death or life imprisonment. The prosecuting attorney was not injecting any personal opinions about this specific case. The claim here is without merit.
Basile, 942 S.W.2d at 353-54. Neither party asserts that the trial court's decision was "contrary to" clearly established Supreme Court precedent. Accordingly, the Court must determine whether the trial court's decision was an "unreasonable application" of clearly established Supreme Court precedent. See 2254(d)(1).
In its review of a petitioner's claim that aspects of voir dire violated his constitutional rights, the Supreme Court stated:
It is true that voir dire is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion. The Constitution, after all, does not dictate a catechism for voir dire, but only that the defendant be afforded an impartial jury.
Morgan v. Illinois, 504 U.S. 719, 729, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). Additionally, the Eighth Circuit has remarked that "there may be circumstances where a party's manner of conducting voir dire renders a jury impartial and thereby triggers a Sixth Amendment violation." Hobbs v. Lockhart, 791 F.2d 125, 129 (8th Cir.1986). Accordingly, the Court must determine whether the trial court's decisions were unreasonable applications of the Supreme Court's rule that the Constitution requires an impartial jury in a criminal trial. The Court considers each of Basile's complaints in turn.
First, Basile claims that the prosecutor's statements to venireperson Kathy Gruenefeld during voir dire were inflammatory:
This is a case in which it is alleged that the Defendant murdered the mother of four children. Obviously we are interested in having people from all walks of life and backgrounds on the jury including mother's [sic].
I mean, the fact that you are a mother could create a hardship here but do you see how we would want somebody with your background on the jury? [Tr. 80.]
Notwithstanding the fact that the trial court sustained defense counsel's objection to the form of the question, this Court finds that these statements were not improper; rather, the prosecutor accurately stated facts of the case  that Elizabeth DeCaro had four children  and reasonably sought jury members who might be especially knowledgeable about aspects of the case the prosecutor wished to emphasize. These statements in no way rendered the jury impartial.
Second, Basile asserts that the prosecutor personally attacked defense counsel, who had questioned prospective jurors regarding their views about the death penalty, by objecting to these questions with the following statement: "This is a very contrived thing that's going on here right now." (Tr. 706.) Basile claims that this personal attack continued when the prosecutor stated to venirepersons that, "The state doesn't pick its witnesses. The defendant might pick his ...," at which point defense counsel interrupted him with an objection. The Court notes that the trial court sustained this objection and, upon defense counsel's request, instructed the venire panel to disregard the prosecutor's statement. (Tr. 1340.) The Court believes that this statement did not constitute *957 an attack on defense counsel. The Court further finds that the curative action taken by the trial court was sufficient to negate any impact which this statement might have had on the venire panel.
Third, Basile claims that the prosecutor improperly injected his personal opinion into the voir dire proceedings by stating that Basile had "committed a very terrible murder." (Tr. 872). However, the prosecutor made this statement in the context of a series of hypothetical questions to venireperson Blanche Prichard:
Q: Could you enter a verdict of life without parole if you weren't convinced beyond a reasonable doubt as to the first step, that there was an aggravating circumstance, convinced unanimously with others?
A: Yes.
Q: And this would be, I mean, the preposition [sic] before this is that basically you found the person guilty.
A. I understand that.
Q. He committed a very terrible murder.
A. I understand that.
Q. Have you thought about that before this time or today at all when you knew you were coming here, that you could give death?
A. Yes, yes, that's the way I think. (T. 872-73.)
Because the prosecutor's statement was part of a series of hypothetical questions designed to query the venireperson's attitude toward imposing different types of punishment, rather than a characterization of Basile's crime, the Court believes that this statement was not improper.
Having determined that Basile's constitutional right to an impartial jury was not violated by any of the prosecutor's statements during voir dire, the Court finds that no mistrial was warranted on the basis of these remarks. Accordingly, Basile's counsel was not ineffective for failing to object to these statements or for failing to request a mistrial on the basis of these statements. Because Basile's attorney's performance was not deficient, Basile cannot prevail on his ineffective assistance on counsel claim. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. For the foregoing reasons, the Court will deny relief based on ground two.

C. GROUND THREE: IMPROPER EVIDENCE OF CRIMES AND OTHER BAD ACTS
In his third ground for relief, Basile asserts that the trial court violated his rights under the Sixth, Eighth, and Fourteenth Amendments by allowing the introduction of evidence of Basile's other crimes, bad acts, and bad character even though Basile had not placed them at issue. Basile further claims that Defense counsel's failure to object to the introduction of this evidence violated Basile's right to effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments. The Missouri Supreme Court divided its analysis of Basile's evidence claim into five parts, which this Court will consider in turn. The Missouri Supreme Court analyzed the first part of this claim as follows:
Basile claims that improper evidence of other crimes, bad acts and bad character were admitted. Again, most of the claims are reviewable only as plain error or in conjunction with claims of ineffective assistance of counsel.
A.
Without objection, Susan Jenkins testified that she accompanied Basile when he was looking for a place to strip the van. One of several stops they made was at Bill Borak's house. There, Basile "smoked a joint" with four others. [Tr. 1809.] Basile now alleges ineffective assistance of counsel for failure to object to the admission of evidence. At the post-conviction motion hearing, defense counsel testified she did not want smoking marijuana to be perceived as "some big, bad act." The motion court found that counsel did not object as a matter *958 of trial strategy. The motion court did not clearly err in finding counsel's conduct to be sound strategy. Defense lawyers are given a broad range of leeway in determining what strategy to follow, and that leeway extends to decisions as to when to make objections. In addition, the isolated mention of using marijuana did not amount to plain error.
Basile, 942 S.W.2d at 355. Neither party asserts that the state court's decision was "contrary to" clearly established Supreme Court precedent. Accordingly, the Court must determine whether the state court's decision was an "unreasonable application" of clearly established Supreme Court precedent. See 2254(d)(1).
In Payne v. Tennessee, the Supreme Court stated that if evidence introduced at a criminal trial "is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." 501 U.S. 808, 825, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (citing Darden v. Wainwright, 477 U.S. 168, 170-83, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)). Darden provides that the "relevant question" is whether admission of the challenged evidence "so infected the trial with unfairness as to make the resulting conviction a denial of due process." 477 U.S. at 181, 106 S.Ct. 2464; see also Romano v. Oklahoma, 512 U.S. 1, 12, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994) ("The relevant question in this case ... is whether the admission of evidence regarding petitioner's prior death sentence so infected the sentencing proceeding with unfairness as to render the jury's imposition of the death penalty a denial of due process").[4]
In applying this test, the Eighth Circuit has cautioned that, "in a § 2554 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." Anderson, 44 F.3d at 679. A petitioner must meet his burden of showing that "absent the alleged impropriety, the verdict probably would have been different." Harris v. Bowersox, 184 F.3d 744, 752 (8th Cir.1999). Furthermore, in making its determination, the Court "must review the totality of the facts in the case and the fairness of the whole trial." Id. (quoting McDaniel v. Lockhart, 961 F.2d 1358, 1360 (8th Cir.1992)). Overwhelming evidence of a petitioner's guilt may render harmless even an erroneous admission of challenged evidence. Hobbs v. Lockhart, 791 F.2d 125, 128 (8th Cir.1986).
Basile claims that the trial court's admission of evidence that Basile had recently smoked marijuana was irrelevant and prejudicial. The Court disagrees. Here, the witness made an unsolicited statement which accurately described Basile's activities. Susan Marie Jenkins had known Basile since high school. She accompanied him to Jackson, Missouri, when he burned the DeCaro van. (Tr. 1809-1836.) Basile's defense counsel made a strategic defense decision to portray him as a braggadocios car thief, framed by DeCaro for murder. Jenkins's unsolicited mention of one use of marijuana by Basile did not "so infect the trial with unfairness as to make the resulting conviction a denial of due process," Darden, 170 U.S. at 181, particularly in light of the considerable evidence of Basile's guilt presented at trial, described in detail supra. For these reasons, the Court finds that the admission of evidence that Basile had recently smoked marijuana did not deprive him of a fair trial. Darden, 477 U.S. at 181, 106 S.Ct. 2464.
The Missouri Supreme Court analyzed the second part of this claim as follows:
B.
State's witness Edward Murphy Giegerich testified that he taught Basile *959 in a basic electricity class for approximately nine weeks. For a few weeks, when both of them were living in Fenton, Missouri, Giegerich gave Basile a ride home from the class. Giegerich testified that, among other topics discussed in the car, Basile mentioned that his girlfriend was pregnant. [Tr. 1898.] This noncriminal fact, while only marginally relevant, is not the sort of evidence of bad conduct that is likely to inflame the jury against the defendant and result in manifest injustice or undermine confidence in the outcome of the case. Thus, there was no plain error in admitting the evidence. Defense counsel was not ineffective in failing to object to it.
Basile, 942 S.W.2d at 355-56. Basile claims that the trial court's admission of evidence that Basile's girlfriend was pregnant was irrelevant and prejudicial. As stated supra, within the context of the trial  in which the government adduced considerable evidence of Basile's guilt  these remarks did not rise to the level of prejudicial error. The Court finds that the admission of this evidence did not so infect the trial with unfairness as to make the resulting conviction a denial of due process. Darden, 477 U.S. at 181, 106 S.Ct. 2464.
The Missouri Supreme Court analyzed the third part of this claim as follows:
C.
Basile alleges that plain error and ineffective assistance of counsel occurred when the State adduced evidence of Basile's involvement in car thefts and stripping the cars for parts. [Tr.1905, 10.] At the post-conviction hearing, defense counsel testified that she made a strategic decision not to object to this evidence in order to promote the defense theory that Basile was only a car thief and merely was being framed as a murderer. The trial court did not clearly err in finding this to be within the range of permissible strategic decisions. Thus, counsel was not ineffective.
In addition, there was no plain error in admitting the evidence. The evidence of Basile's involvement in stealing and cutting up cars was necessary to present a clear and coherent picture of the events surrounding his involvement in Elizabeth DeCaro's murder. In order to establish Basile's involvement, some evidence of his experience in dealing with stolen cars was essential and admissible. See State v. Harris, 870 S.W.2d 798, 810 (Mo. banc), cert. denied, 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994).
Basile, 942 S.W.2d at 356. Basile claims that the trial court's admission of evidence that Basile had stolen cars was irrelevant and prejudicial. To the contrary, the Court believes that the admission of this evidence was vital to his defense counsel's argument that Basile was merely a car thief whom DeCaro had set up to take the fall for his wife's murder. Therefore, the admission of this evidence did not deprive Basile of a fair trial. Darden, 477 U.S. at 181, 106 S.Ct. 2464.
The Missouri Supreme Court analyzed the fourth part of this claim as follows:
D.
On redirect, Jeffrey Niehaus, Basile's former roommate, testified that their living arrangement did not work out because Basile had two girlfriends at once and treated one of them "fairly bad." [Tr.1997.] Basile claims his counsel was ineffective for failing to object to this testimony. Given all the evidence in this case, this short reference to a past non-crime cannot be held to have had a decisive effect on the outcome so as to result in manifest injustice. Neither is the evidence sufficient to undermine confidence in the outcome of the case. The claim of ineffective assistance of counsel on this point is denied.
Basile, 942 S.W.2d at 356. Basile claims that the trial court's admission of this character evidence, suggesting that Basile is an immoral person, was prejudicial. Like the evidence that Basile's girlfriend *960 was pregnant, this character evidence was harmless within the context of the much more grave evidence that Basile had murdered Elizabeth DeCaro. Because its admission could not have changed the outcome of the trial, the Court finds that Basile was not deprived of a fair trial on this basis. Darden, 477 U.S. at 181, 106 S.Ct. 2464.
The Missouri Supreme Court analyzed the fifth part of this claim as follows:
E.
Kenneth Robinson testified that Basile told him about DeCaro's plot to murder his wife and to steal vehicles for insurance money. Robinson testified that his response to this information was, "I told [Basile] first thing he ought to do is be back in jail or something. ..." [Tr. 1938-39.] Basile claims that even though no objection was made, it was plain error to allow this statement since there was a ruling on Basile's motion to limit evidence of prior criminal acts. Basile also asserts plain error regarding Doug Meyer's statement to Basile that buying a gun was in violation of Basile's parole. [Tr. 2170.] Basile further argues that counsel was ineffective in failing to object to the statements by Robinson and Meyer.
Basile overlooks the fact that Meyer testified that Basile said it was "either him or her and [he wasn't] going back to jail." Inasmuch as that evidence was in the case, the responses by Robinson and Meyer about violating parole had no prejudicial effect. Moreover, the responses are relevant to explain how Basile became involved in a plot with Richard DeCaro and his difficulty in being able to get a gun to carry out the plot. There was no plain error on this point. With regard to the claim of ineffective assistance of counsel, at the motion hearing defense counsel stated that it was trial strategy to present a picture of Basile as "just a thief," not a murderer. None of his prior jail time or the parole he was under involved murder. The motion court did not clearly err in finding defense counsel's failure to object to be consistent with a reasonable trial strategy.
Basile, 942 S.W.2d at 356. Basile claims that the trial court's admission of evidence that Basile had been in jail and was on parole was presumptively prejudicial as evidence of other crimes. However, as noted supra, this evidence fit into Basile's counsel's plan to depict Basile as a run-of-the-mill car thief who had been used and framed by DeCaro. For that reason, the Court finds that it was not prejudicial. Its admission did not deprive Basile of a fair trial. Darden, 477 U.S. at 181, 106 S.Ct. 2464.
Finally, Basile claims that his trial counsel was ineffective in failing to object to the admission of the evidence that he challenges in ground three. However, "the performance of an attorney is not deficient for failure to object to admissible evidence." Anderson, 44 F.3d at 680. This Court is bound by the Missouri Supreme Court's ruling that the admission of challenged evidence was not plain error, because "state law governs questions concerning the admissibility of evidence." Maynard v. Lockhart, 981 F.2d 981, 986 (8th Cir.1992) (citing Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991)) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Therefore, this Court may reverse Missouri's evidentiary ruling only if it "infringes upon a specific federal constitutional right or is so grossly or conspicuously prejudicial that it fatally infected the trial and denied the defendant the fundamental fairness that is the essence of due process." Maynard, 981 F.2d at 986. In the preceding analysis, the Court has found that the admission of the challenged evidence did not deprive Basile of a fair trial; accordingly, reversal *961 of Missouri's evidentiary rulings is not warranted. Nor was defense counsel's performance deficient or prejudicial by counsel's failure to object to statements which were not ultimately prejudicial to the outcome of Basile's trial. Therefore, the Court concludes that the state court's application of Strickland to Basile's ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of established Supreme Court precedent. For the foregoing reasons, the Court shall deny Basile's claims in ground three.

D. GROUND FOUR: PROSECUTORIAL MISCONDUCT
In his fourth ground for relief, Basile claims that his rights under the Sixth, Eighth, and Fourteenth Amendments were violated when the prosecutor knowingly introduced improper evidence and conducted himself in a manner intended to inflame the passions of the jury. Basile further asserts that defense counsel's failure to object to this prosecutorial misconduct violated Basile's right to effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments. The Missouri Supreme Court addressed these claims as follows:
State's witness Lt. Patrick McCarrick testified that Susan Jenkins was referred to as a confidential informant. When asked why, McCarrick answered, "... I believe the Defendant was still at large and she was afraid for her safety, so we didn't want to tell anybody who she was." [Tr.2058.] Basile's objection to this testimony was overruled. He now claims the question leading to this statement was irrelevant and designed to prejudice him. This testimony is relevant because it explains Jenkins' delay in coming forward to turn Basile in to the police. Admission of relevant evidence is not reversible error.
Basile further argues that the prosecuting attorney injected "unfair insinuations" into the case by holding a picture of Elizabeth DeCaro's body in front of Basile's face for an extended period of time. During a bench conference, defense counsel accused the prosecuting attorney of holding the photograph in front of Basile, staring at him, and showing the picture to the jury before it was admitted into evidence. The prosecuting attorney denied doing any of these things. The court then instructed the prosecuting attorney to show the exhibit to the jury only after showing it to defense counsel and offering it into evidence. Defense counsel then waived looking at the pictures, and they were admitted. The trial judge did not note that the prosecuting attorney had engaged in the improper behavior complained of by Basile's counsel, although she was obviously in a position to observe the conduct of both the attorneys and Basile. The record presented does not support this claim, and it is denied.
During the penalty phase, the victim's mother testified as to the impact of Elizabeth DeCaro's death on the family. Some observers began to cry and, apparently, the prosecuting attorney also had trouble maintaining his composure. [Tr. 2541-42.] Basile's attorney asked for a recess, which was granted. Basile now contends that the prosecuting attorney improperly injected himself and his emotions into the trial. Again, the trial court was in a far better position to determine any prejudicial effect that existed due to the events described. The trial court's immediate corrective action in granting a recess is sufficient to rebut any claim that the jury verdict was based on the personal emotional reactions of the prosecuting attorney. This claim is denied.
Basile, 942 S.W.2d at 355. Because neither party asserts that the state court's decision was "contrary to" clearly established Supreme Court precedent, the Court must determine whether the state court's decision was an "unreasonable application" of clearly established Supreme *962 Court precedent. See 2254(d)(1). As noted supra, the Supreme Court law applicable to Basile's ground four claims of improper evidence and prosecutorial misconduct is essentially the same. Anderson v. Goeke, 44 F.3d 675, 678 n. 2 (8th Cir.1995). The appropriate test to determine if the admission of evidence or prosecutorial misconduct denied a habeas petitioner due process is whether the challenged evidence of conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Thus, Basile must show that "absent the alleged impropriety the verdict probably would have been different." Anderson, 44 F.3d at 679. Furthermore, in making its determination, the Court "must review the totality of the circumstances of the facts in the case and analyze the fairness of the particular trial under consideration," Rainer v. Dept. of Corrections, 914 F.2d 1067, 1072 (8th Cir. 1990), taking into account the amount of evidence of Basile's guilt. Hobbs v. Lockhart, 791 F.2d 125, 128 (8th Cir.1986).
Basile first claims that the prosecutor's asking a police officer why Susan Jenkins was a confidential informant  and eliciting the testimony that Jenkins was afraid for her safety  was irrelevant and prejudicial, intended to inflame the passions of the jury. Considering the totality of the circumstances of the trial, and the strong evidence of Basile's guilt, the Court believes that this evidence was not prejudicial to the outcome of the trial. Therefore, the Court finds that the admission of this evidence did not deprive Basile of a fair trial. Darden, 477 U.S. at 181, 106 S.Ct. 2464.
Accordingly, the Court rejects Basile claim that his trial counsel was ineffective in this instance. The Missouri Supreme Court found the challenged testimony relevant and admissible, a ruling that binds this Court. Maynard v. Lockhart, 981 F.2d 981, 986 (8th Cir.1992). As "the performance of an attorney is not deficient for failure to object to admissible evidence," Anderson, 44 F.3d at 680, the Court finds that defense counsel was not ineffective. Moreover, defense counsel's performance was not deficient or prejudicial because of counsel's failure to object to statements which were not ultimately prejudicial to the outcome of Basile's trial, as the Court has found. Therefore, the Court concludes that the state court's application of Strickland to Basile's ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of established Supreme Court precedent.
Second, Basile claims that the prosecutor's holding a picture of Elizabeth DeCaro's body in front of Basile's face for an extended period of time was intended to inflame the jury's passions. Like the Missouri Supreme Court, this Court cannot divine from the record before it if the prosecutor indeed held the picture in front of Basile's face, as he claims, nor the context of these alleged actions. This Court must, then, rely on the considered judgment of the trial judge, who witnessed these events and did not find that the prosecutor had acted improperly. Accordingly, the Court finds that no prejudice arose from this alleged act, nor did it deprive Basile of a fair trial.
Basile's third claim is that the prosecutor's display of emotion during the penalty phase of the trial was intended to inflame the jurors' passions and play upon their fears. In Wise v. Bowersox, 136 F.3d 1197, 1206 (8th Cir.1998), the Eighth Circuit found that petitioner's constitutional rights were not violated by the jury's seeing relatives of one of petitioner's victims sitting in the first row weeping during the penalty phase of his trial. Significantly, the Court of Appeals concluded that the trial judge had properly handled the presence of the weeping relatives: "when he saw them weeping, he declared a recess, removed the jury from the courtroom, and had the family members move to a location farther from the jury." Id. Likewise, in *963 Basile's case the trial judge responded to the prosecutor's weeping by granting defense counsel's request for a recess, thereby bringing an end to this display of emotion. The Court finds that the trial court judge responded adequately to the prosecutor's emotional outburst, and, therefore, that Basile's constitutional rights were not violated by this conduct.
Finally, the Court concludes that its finding that the challenged conduct either was not improper, or if it was improper, was not so prejudicial as to deprive the defendant of a fair trial, Young, 161 F.3d at 1162, makes unavailing Basile's claim that his counsel was ineffective by failing to properly object and to act as a prudent attorney would in response to the prosecutor's alleged misconduct. Therefore, the Court concludes that the state court's application of Strickland to Basile's ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of established Supreme Court precedent. For the foregoing reasons, the Court shall deny Basile's claims in ground four.

E. GROUND FIVE: IMPROPER HEARSAY EVIDENCE
In his fifth ground for relief, Basile argues that his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated when the prosecutor repeatedly elicited improper hearsay testimony during trial. Basile further claims that his defense counsel's failure to object to the hearsay testimony violated Basile's right to effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments. The Missouri Supreme Court reviewed these claims as follows:
Basile asserts that the trial court erred because it should have sua sponte declared a mistrial upon the admission of hearsay statements by State's witnesses. Generally, inadmissible hearsay which comes into the record without objection may be considered by the jury. State v. Thomas, 440 S.W.2d 467, 470 (Mo.1969). In the absence of a timely objection or proper motion to strike, hearsay evidence is admitted. State v. Griffin, 662 S.W.2d 854, 859 (Mo. banc 1983), cert. denied, 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 153 (1984).
Basile further alleges that counsel was ineffective for not objecting to the evidence. Not every failure to object to evidence amounts to ineffective assistance of counsel. State v. Gray, 887 S.W.2d 369, 380 (Mo. banc 1994), cert. denied, 514 U.S. 1042, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995). To establish counsel's performance was deficient, Basile must overcome the strong presumption that counsel's conduct falls within the wide range of permissible, reasonable professional assistance. Id. at 381.
A.
Melanie Enkleman, Elizabeth DeCaro's sister, testified without objection that after the accident in the garage with the van in which Richard DeCaro ran over her leg, Elizabeth asked Richard, "What are you trying to do, kill me?" [Tr. 1653-55.] Enkleman also stated on the day of the murder, Elizabeth told her at work that she was scared, that Elizabeth made three telephone calls in Enkleman's presence after which Elizabeth told Enkleman Richard DeCaro sounded nervous. "He's up to something. It is just like the day I went through the wall and the day the van blue [sic] up." [Tr. 1656-57.] Enkleman also testified that Elizabeth said that Richard was paranoid, was trying to kill her, was dealing drugs, that Richard knew guys who could blow up the van, and that Richard admitted to having an affair with his secretary. [Tr. 1664.]
Similarly, Mary Pohlman Marchetto testified that at a birthday party on February 10th, the night the van was stolen, Elizabeth and Richard left early. Elizabeth later told her that Richard probably had the van stolen and that Richard had had an affair. [Tr. 1727-28.] It is complained that Enkleman was allowed *964 to testify that Richard DeCaro told her that Elizabeth was having a private investigator follow him, and that he was dealing in drugs. [Tr. 1664.]
The apparent purpose of offering the statements of Elizabeth DeCaro was not to prove the truth of her statements, but to show that the DeCaros' marital relationship was breaking up and, further, that Elizabeth had knowledge of the insurance fraud scheme involving the van. Her attitude toward Richard and knowledge of his criminal involvement were relevant to establish Richard DeCaro's motive to murder Elizabeth. Out of court statements offered to prove knowledge or state of mind of the declarant are not subject to a hearsay objection. State v. Chambers, 891 S.W.2d 93, 104 (Mo. banc 1994); State v. Parker, 886 S.W.2d 908, 925 (Mo. banc 1994); rehearing denied, cert. denied, 514 U.S. 1098, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995); State v. Shurn, 866 S.W.2d 447, 457 (Mo. banc 1993), cert. denied, 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994).
None of the above statements directly implicated defendant in the crime. In fact, admission of evidence that Richard DeCaro was nervous, had tried to kill Elizabeth, used drugs, was mentally ill, and had arranged to steal the van are all consistent with the defense theory that Basile was merely a thief who was framed for a murder committed by Richard DeCaro. Because the claimed hearsay testimony failed to implicate defendant, there was no plain error. Furthermore, failure to object was consistent with a reasonable defense strategy of placing as much blame as possible on Richard DeCaro for the murder. No ineffective assistance of counsel is established.
B.
Basile complains that James Torregrossa was permitted to testify that DeCaro asked him about getting rid of his van and his wife [Tr. 1697-98], and that DeCaro said that he would not want to wish marriage on anybody. [Tr. 1703.] He further stated that DeCaro told him to lie if pressured by police to disclose information about this conversation. [Tr. 1703.] Craig Wells testified that Richard DeCaro asked him if he knew anyone who could get rid of the van for him. [Tr. 1739.] Wells further testified that he called DeCaro after the murder to tell DeCaro that police had found the Blazer and that Basile was in custody. Wells testified that Richard DeCaro denied knowing Basile in that conversation. [Tr. 1764.] Testimony by witnesses of statements of a co-conspirator offered to show the furtherance of the conspiracy is admissible. State v. Isa, 850 S.W.2d 876, 893 (Mo. banc 1993). Thus, the statements of DeCaro were admissible against Basile.
C.
Basile further complains of testimony by Susan Jenkins that on the evening when she was with him trying to decide how to get rid of the van, Basile at one point was observed whispering to his mother. Jenkins testified she heard him say something about a VCR. [Tr. 1808.] Generally, statements of the defendant are excepted from the hearsay rule. In this particular instance, we are unable to discern any prejudice from this testimony.
Basile, 942 S.W.2d at 356-57. In analyzing Basile's claims in ground five, the Court first must determine the proper scope of its review. Basile vigorously asserts that the admission of inadmissible hearsay evidence at trial violated his right to due process under the Fourteenth Amendment and his rights under the Confrontation Clause of the Sixth Amendment.[5] However, Basile's defense counsel *965 failed to object to any of these hearsay statements. Moreover, defense counsel testified at Basile's Rule 29.15 motion hearing that she deliberately chose not to object to these statements as a matter of defense strategy. Defense counsel explained that her defense theory was that Richard DeCaro wanted to kill his wife, and hired someone to kill his wife, but that he framed Basile for Elizabeth DeCaro's murder by hiring Basile to steal first his van and then his Blazer. Rule 29.15 Hr'g Tr. at 46-47, 72-75, 78-83. Under this theory, defense counsel did not object to testimony by Melanie Enklemann and Mary Pohlman Marchetto that Elizabeth believed that her husband wanted to kill her, that they were having serious marital difficulties, that she knew about the scheme to have the van stolen, and other testimony which served defense counsel's theory that Richard DeCaro had a motive to kill Elizabeth and desired her death. Similarly, defense counsel chose not to object to the admission of statements by James Torregrossa and Craig Wells which indicated that DeCaro planned to hire someone to steal his van and kill his wife. Defense counsel believed that these statements supported her defense theory that DeCaro hired Basile to steal his cars and then framed him for another's murder of Elizabeth.
In Carter v. Armontrout, 929 F.2d 1294, 1296 (8th Cir.1991), the Eighth Circuit considered a habeas petitioner's argument that his right to a fair trial was violated when the trial court failed to order a mistrial after a police officer made a statement that implied that an eyewitness who did not testify had corroborated the officer's story. The trial court sustained defense counsel's objection to the statement, but defense counsel did not request a mistrial. Id. At the subsequent post-conviction proceeding, defense counsel testified that she did not want a mistrial at that point in the trial. Id. at 1297. In evaluating whether the trial court erred by not sua sponte granting a mistrial, the Eighth Circuit noted the Eleventh Circuit's analysis of similar fair trial claims, in which the court reasoned that sua sponte issuance of a curative instruction could interfere with a defendant's trial strategy. Id. at 1297, n. 2 (citing Willis v. Kemp, 838 F.2d 1510 (11th Cir.1988), cert. denied, 489 U.S. 1059, 109 S.Ct. 1328, 103 L.Ed.2d 596 (1989)). In Willis, the Eleventh Circuit considered three ineffective assistance of counsel scenarios, describing the second as occurring when defense counsel chose not to object to arguably objectionable statements because of a reasonable trial strategy, but this strategy ultimately failed and "prejudice remained." 838 F.2d at 1519. The court explained, "In this scenario, the petitioner's attorney, rather than the prosecutor or the court, caused the unfair trial. The petitioner has no constitutional claim in this situation: he received effective assistance of counsel and the court did not deny him a fair trial." Id. The court continued as follows:
It might be argued that in this scenario, the trial court denied the petitioner a fair trial by not declaring a mistrial or delivering a curative instruction to the jury on its own initiative. This argument is flawed, however. In the absence of a defense motion for mistrial, a court is not likely to declare a mistrial *966 because this may operate to acquit the defendant. See United States v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). A defendant is constitutionally entitled to proceed to verdict once jeopardy has attached. The sua sponte declaration of a mistrial, without the defendant's consent, would deny him that right and he could contend, prior to retrial, that retrial would constitute double jeopardy. See id. at 609, 96 S.Ct. at 1080 ("The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of [prejudicial prosecutorial] error."). Accordingly, in the second scenario, it would be difficult for a petitioner to argue successfully that the trial judge denied him due process by failing to declare a mistrial on his own initiative.
The sua sponte delivery of a curative instruction is not something that habeas courts require, in retrospect, every time a prosecutor has engaged in overreaching conduct. To be sure, there are occasions when a trial judge, without a request from counsel, interrupts the proceedings to deliver a cautionary instruction to eliminate undue prejudice. It does not follow, however, that the failure of the court to interrupt the proceeding to give a cautionary instruction amounts to constitutional error. Often, the delivery of a cautionary instruction would defeat defense strategy; accordingly, defense counsel frequently do not request such an instruction.
Id. at 1519, n. 19. This Court finds the reasoning of Willis applicable to the claims Basile raises here. That is, whether Basile's constitutional rights were violated by the admission of these challenged statements depends on whether his trial counsel's defense strategy of not objecting to testimony which suggested that Richard DeCaro wanted his wife dead and framed Basile, a car thief, for her murder, was a reasonable trial strategy. If this strategy was reasonable, then "no due process claim arises." Carter, 929 F.2d at 1297, n. 2 (citing Willis, 838 F.2d at 1519). If this strategy was not reasonable, then the Court must decide whether Basile was prejudiced by counsel's failure to object. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In any event, the trial court's declining to sua sponte issue a curative instruction or declare a mistrial does not give rise to a constitutional claim under either the Fourteenth or Sixth Amendments in this case. See Carter, 929 F.2d at 1297, n. 2; Swofford v. Dobucki, 137 F.3d 442, 446 n. 2 (7th Cir.1998) (finding no Confrontation Clause violation where petitioner could not overcome presumption that defense counsel's failure to object might be considered sound trial strategy).
In determining whether the state court's finding that defense counsel was not ineffective was an unreasonable application of established Supreme Court precedent, the Court turns to the familiar Strickland test, under which Basile must show both deficient performance and prejudice to prevail. 466 U.S. at 687, 104 S.Ct. 2052. Specifically, Basile "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy," id. at 689, 104 S.Ct. 2052, as his defense counsel testified it was. Furthermore, "[t]he Supreme Court has recognized that strategies devised after extensively investigating the law and facts relevant to any and all probable options are virtually unchallengeable." Bell v. Evatt, 72 F.3d 421, 429 (4th Cir.1995). That the trial strategy was ultimately unsuccessful does not, standing alone, prove prejudice or that the counsel was ineffective. Id. Nor should a court second-guess such strategy in hindsight. Rodden v. Delo, 143 F.3d 441, 448 (8th Cir.1998).
Here, the Court finds that defense counsel's strategy of not objecting to hearsay statements that contributed to her defense theory that the DeCaro's marriage was on the rocks, that DeCaro wished his wife *967 dead, and that he hired Basile to steal his van and Blazer and then framed him for the murder of his wife was reasonable. The Court further finds that each of the statements which Basile now challenges can reasonably be construed as having contributed to this defense theory.[6] It is true, as Basile asserts, that these statements implicated Basile as a car thief, working for a man who wanted someone to kill his wife. But Basile "fails to acknowledge that his trial counsel confronted a difficult situation." Bell, 72 F.3d at 429.
Faced with considerable evidence that Basile had stolen the DeCaros' cars for money, including, most damningly, the DeCaros' Blazer on the day of Elizabeth's murder, defense counsel made a reasonable decision to construct Basile's defense around the theory that he was a car thief set up by a man who wanted someone to kill his wife  and accordingly did not object to statements which appeared to support this theory. Therefore, defense counsel's performance was not deficient, and the state court's denial of Basile's claims of ineffective assistance of counsel was a reasonable application of Strickland. Basile's ground five claims are denied.

F. GROUND SIX: VICTIM IMPACT EVIDENCE
In his sixth ground for relief, Basile asserts that the trial court violated his rights under the Eighth and Fourteenth Amendments by permitting the introduction of victim impact evidence during the penalty phase of his trial. Basile further contends that the Rule 29.15 motion court's failure to grant relief to Basile on this issue denied his rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments. He also asserts that defense counsel's failure to request a penalty phase instruction as to the limited use of victim impact testimony violated his Sixth Amendment right to effective assistance of counsel. The Missouri Supreme Court evaluated these claims as follows:
A.
Basile claims error in overruling defense objections to victim impact evidence and certain motions relating to victim impact evidence.
Through pictures, letters and stories about Elizabeth, the victim's mother and sister testified as to the effect Elizabeth DeCaro's death had on the lives of surviving family and friends. Elizabeth's mother, Georgianna Van Iseghm, read from a diary she kept about her daughter's numerous good qualities. Melanie Enkleman, the victim's sister, read a poem and a letter by another sister, Theresa. Enkleman also read from her own prepared statement explaining her feelings about the loss of her sister. Basile objects to all the victim impact evidence, claiming it was so emotional and inflammatory and that its prejudice far outweighed any probative value and rendered his trial fundamentally unfair.
Basile takes special exception to two paragraphs of a letter written by Theresa and three paragraphs of Enkleman's prepared statement. The critical portion of Theresa's letter read by Enkleman states as follows:

*968 To truly describe Elizabeth to you would take more time than we both have. If I did have to describe her, I would say full of life and full of and an [sic] outgoing love for everyone. And that is what you, Daniel Basile, took away from me and my family.
You took away her sweet smile, her warm personality and her generous heart.
You took a family as a whole and tore a very important part of it away. That ripped out part, Dan, was my sister. And so as you listen to this poem, think of the lives that you've affected, the children who's [sic] mother has been selfishly and unfairly taken away, and the family, my family, that will never be the same all because of you. [Tr. 2561-62.]
The specially objectionable portion of the Enkleman statement reads as follows:
You have also hurt all our children. Elizabeth's children must grow up knowing that their mother was murdered for greed, in their own home, waiting for her, which is supposed to be our safe place. The counseling they will need to get through this is expensive, and no child should be put through this. My thirteen-year-old son still cannot stay home by himself because he's terrified someone is hiding and they want to murder him. I want you to know what you did to my family is unforgivable, but we will survive with love because we will not allow someone like you to destroy us. You see, I saw what you did. Where everyone here has just heard what he did. I saw Elizabeth lying on the floor. I saw her not breathing. I saw them turning her over and the blood on her face. I saw them try to save her. I saw them lift her up and I saw her neck as red as fire. I saw them put her on the stretcher with the tubes in her and I saw  and I knew then that she was dead. But I prayed to God that somehow she would live. And I pray to God now that justice will be served. [Tr. 2568.]
Defense counsel objected to the statements of Enkleman and requested a mistrial.
The State "is permitted to show that the victims are individuals whose deaths represent a unique loss to society and to their family and that the victims are not simply `faceless strangers.'" [State v.] Gray, 887 S.W.2d [369], 389 [Mo. 1994.] "[The] State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant." Payne v. Tennessee, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991). All the victim impact evidence in this case, including that which is quoted, was directed at defendant's moral culpability in causing harm to the victim and her family.
Nevertheless, defendant claims that the victim's family members' characterizations and opinions about the crime, the defendant and the appropriate sentence violate the Eighth Amendment to the Constitution. Here none of the witnesses engaged in the conduct complained of. To say that Basile had "taken away" the victim from her family, that he had hurt the family by what he had done, and in stating that she prayed "to God now that justice will be served" are not expressions of opinion about the crime, characterization of the defendant, or a suggestion as to the appropriate sentence. Therefore, the Court concludes that the victim impact witnesses' testimony did not "so infect the sentencing proceeding as to render it fundamentally unfair," as claimed here. Id. at 831, 111 S.Ct. at 2612. The motion to exclude the evidence was properly denied.
* * * * * *
C.

*969 Basile claims counsel was ineffective in failing to preserve the objection to the victim impact testimony. As previously noted, he has failed to establish that it was error to admit the victim impact testimony. An objection was made early on and renewed with a continuing objection. This claim of ineffective assistance of counsel is without merit.
Basile, 942 S.W.2d 342, 358-59. Neither party asserts that the state court's decision was "contrary to" clearly established Supreme Court precedent. Accordingly, the Court must determine whether the state court's decision was an "unreasonable application" of clearly established Supreme Court precedent. See 2254(d)(1).
The parties agree that the primary Supreme Court precedent applicable to Basile's victim impact evidence claim is Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). In Payne, the Supreme Court overruled Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) by holding that the Eighth Amendment does not bar the admission of victim impact testimony in the sentencing phase of a capital trial. 501 U.S. at 825, 111 S.Ct. 2597. Reasoning that a capital defendant is entitled to submit mitigating evidence to remind the sentencing body of his humanity and individuality, the Court declared that, "a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant." Id. "[V]ictim impact evidence ... is designed to show ... each victim's uniqueness", id. at 823, 111 S.Ct. 2597, and "evidence about the victim and the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." Id. at 827, 111 S.Ct. 2597. However, Payne did not overrule Booth's prohibitions against the admission of "information concerning a victim's family members' characterization of and opinions about the crime, the defendant and the appropriate sentence." Id. at 835 n. 1, 111 S.Ct. 2597 (Souter, J., concurring). In addition, the Supreme Court provided that "[i]n the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." Id. at 825, 111 S.Ct. 2597 (citing Darden v. Wainwright, 477 U.S. 168, 179-83, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)).
Basile complains that the victim impact evidence admitted included Elizabeth DeCaro's family members' characterization of and opinions about the crime, the defendant, and the appropriate sentence. Having carefully reviewed all of the victim impact testimony in this case, the Court finds that the witnesses's statements are not expressions of opinion about the crime, characterizations of the defendant, or a suggestion of the appropriate sentence but rather are testimony about Elizabeth and emotional impact of her death on the family. In U.S. v. Hall, the Fifth Circuit found that the victim impact statements complained of were not so unduly prejudicial that they rendered the trial fundamentally unfair, reasoning that, "By and large, the statements did nothing more than generally describe [the victim's] character and her aspirations of becoming a doctor as well as the pain that her family members felt as a result of her senseless death." 152 F.3d 381, 405 (5th Cir.1998). Likewise, the victim impact evidence introduced in the penalty phase of Basile's trial focused primarily on Elizabeth's loving and generous character and the damage done to the family, particularly the children, as a result of Elizabeth's murder and its especially frightening circumstances.
The only arguably questionable statement in this victim impact testimony is Melanie Enklemann's final statement, "And I pray to God now that justice will be served." In Parker v. Bowersox, 188 F.3d 923, 931 (8th Cir.1999), the Eighth Circuit considered a habeas petitioner's contention *970 that his due process rights were violated when the court allowed the victim's ex-husband to testify during the penalty phase that the family was "very concerned what happens" at the trial. The court reasoned:
In Booth, family members of the victim made comments such as "[no one] should be able to do something like that and get away with it" and "[I don't] feel that the people who did this could ever be rehabilitated." 482 U.S. at 508, 107 S.Ct. 2529. The Supreme Court held that such comments unconstitutionally directed the jury to draw certain conclusions from the evidence. Id. In Payne, on the other hand, the Court found that a statement that the victim's son missed the victim was permissible testimony about the emotional impact of the victim's death on the family. See 501 U.S. at 826-27, 111 S.Ct. 2597.
On the one hand, the challenged testimony was not so outcome-specific as the statements in Booth, which gave opinions about the defendant and suggested that the jury impose the death sentence. On the other hand, however, the testimony did not so directly relate to the emotional impact of the victim's death on the family as did the statement in Payne. The statement could be interpreted to mean that the family wanted the jury to impose the death sentence, that it did not want the jury to impose the death sentence, or simply that, no matter what the outcome, the trial was a very important event for the family.
Id. at 931-32. Because the Court of Appeals had already determined that petitioner was entitled to habeas relief based on another claim, the court did not rule on the merits of petitioner's victim impact evidence claim, noting that "[w]hether prudential concerns would counsel against introducing so ambiguous a statement upon retrial is of course a matter for the State to determine." Id. at 932. Comparing the statements in Booth, Payne, and Parker to Melanie Enklemann's statement, "And I pray to God now that justice will be served," the Court believes that Enklemann's statement, while ambiguous, does not clearly suggest that Enklemann favored a sentence of death.
Additionally, the Court finds that the victim impact evidence introduced in this case was not so unduly prejudicial that it rendered the trial fundamentally unfair; therefore, Basile's due process rights were not violated. Accordingly, there was no constitutional violation as a result of the Rule 29.15 motion court's failure to grant relief to Basile on this claim,[7] nor was Basile's Sixth Amendment right to effective assistance of counsel violated by defense counsel's failure to request a penalty phase instruction as to the limited use of victim impact testimony. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. The Court concludes that the state court's rulings on Basile's claims in ground six were not unreasonable applications of Supreme Court precedent and therefore shall deny relief based on ground six.

G. GROUND SEVEN: UNCONSTITUTIONAL APPLICATION OF THE DEATH PENALTY

1. Duplicative Aggravators

In the first part of his seventh ground for relief, Basile claims that the trial court's submission of unconstitutionally duplicative statutory aggravators to the jury violated his rights under the Fifth, Eighth, and Fourteenth Amendments. The Missouri Supreme Court analyzed this claim as follows:
Basile alleges the trial court erred in submitting Instruction No. 13, the statutory aggravating circumstances instruction. It states that in determining Basile's punishment, in order to assess the death penalty, the jury had to first *971 unanimously determine beyond a reasonable doubt that one or more of the following aggravating circumstances exists:
1. Whether the defendant murdered Elizabeth A. DeCaro for another, for the purpose of defendant receiving money or any other thing of monetary value from Elizabeth A. DeCaro or another.
2. Whether the defendant, as agent or employee of Richard DeCaro and at his direction, murdered Elizabeth A. DeCaro.
Defendant alleges that these aggravating circumstances are duplicative. The aggravating circumstances are not identical. Indeed, they "emphasize different facets of [the same] criminal activity." State v. Jones, 749 S.W.2d 356, 365 (Mo. banc); cert. denied, 488 U.S. 871, 109 S.Ct. 186, 102 L.Ed.2d 155 (1988); State v. Wise, 879 S.W.2d 494, 521 (Mo. banc 1994); cert. denied, 513 U.S. 1093, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995). The first aggravator focuses on whether defendant's motive was to receive money. The second aggravator focuses on whether defendant committed the crime as an agent for another person. Different factors may have motivated the defendant. Based on the evidence presented, the jury could have found one or both of the aggravators in consideration of punishment. Doing so does not necessarily lead to an arbitrary or capricious imposition of the death penalty, as Basile suggests.
Basile, 942 S.W.2d at 360.
Neither party asserts that the trial court's decisions challenged in ground seven were "contrary to" clearly established Supreme Court precedent; therefore, the Court must determine whether the trial court's decisions were an "unreasonable application" of clearly established Supreme Court precedent. See 2254(d)(1). In Stringer v. Black, 503 U.S. 222, 231-32, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), reviewing a habeas petitioner's claim that the use of an improper aggravating factor made his death sentence unconstitutional, the Supreme Court explained:
With respect to the function of a state reviewing court in determining whether the sentence can be upheld despite the use of an improper aggravating factor, the difference between a weighing State and a nonweighing State is ... of critical importance. In a nonweighing State, so long as the sentencing body finds at least one valid aggravating factor, the fact that it also finds an invalid aggravating factor does not infect the formal process of deciding whether death is an appropriate penalty.
Missouri is a nonweighing state. Tokar v. Bowersox, 198 F.3d 1039, 1999 WL 1116835, at *9. That is, while a jury must find the existence of at least one aggravating factor in order to impose the death penalty, "the finding of an aggravating circumstance does not play any role in guiding the sentencing body in the exercise of its discretion, apart from its function of narrowing the class of persons convicted of murder who are eligible for the death penalty." Feltrop v. Delo, 46 F.3d 766, 771 (8th Cir.) (quoting Zant v. Stephens, 462 U.S. 862, 874, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983)), vacated on other grounds, 516 U.S. 1006, 116 S.Ct. 559, 133 L.Ed.2d 486 (1995). Instead, a Missouri jury is free to consider all the evidence in the case in deciding whether to recommend the death penalty. Feltrop, 46 F.3d at 771.[8] Reasoning that in Missouri only *972 one aggravating factor is necessary in order to validly impose a death sentence, see R.S. Mo. § 565.032(1), the Eighth Circuit has held that even if an additional aggravator were found to be invalid, the resulting error would be harmless beyond a reasonable doubt. Harris, 184 F.3d at 749; see also Sloan, 54 F.3d at 1385-86 (holding that the jury's penalty phase verdict of death was reliable despite an unconstitutionally vague instruction on one aggravating factor, when the jury had found one valid aggravating circumstance).
The Court believes that these Eighth Circuit rulings foreclose Basile's claim that his death sentence was unconstitutional because of the jury's reliance on duplicative statutory aggravators. The Missouri Supreme Court found that these aggravating circumstances are not identical, but "emphasize different facets of the same criminal activity," and concluded that neither aggravator was invalid. Basile, 942 S.W.2d at 360. Even if this Court disagreed with the state appellate court and found that these aggravators were duplicative, such an error would be harmless, as the jury's finding of one valid aggravating circumstance would remain. See Roberts v. Bowersox, 61 F.Supp.2d 896, 937 (E.D.Mo.1999) (denying relief based on habeas petitioner's claim that two aggravating circumstances were "double counted" against him, because one aggravating circumstance would remain even if the court found that submitting both was error). Because the jury found "at least one valid aggravating factor," even a finding the second aggravating factor was invalid would "not infect the formal process of deciding whether death is an appropriate penalty." Stringer, 503 U.S. at 231-32, 112 S.Ct. 1130. The Court finds that the state court's denial of the first part of ground seven was not an unreasonable application of Stringer and accordingly concludes the Basile is not entitled to relief on that basis.

2. Instruction No. 14

Basile asserts that the trial court violated Basile's rights under the Fifth, Eighth, and Fourteenth Amendments by submitting to the jury Instruction No. 14, which erroneously did not state that (a) the State had to prove the nonstatutory aggravators beyond a reasonable doubt; (b) all twelve jurors had to agree on each nonstatutory aggravator; and (c) if the jury did not unanimously find beyond a reasonable doubt as to each aggravator, they could not consider that circumstance in returning their verdict of death. Basile also claims that his defense counsel was ineffective for failing to object to Instruction No. 14. In its review of this claim, the Missouri Supreme Court stated:
Basile argues that the trial court plainly erred in submitting Jury Instruction No. 14 in the penalty phase, and the post-conviction court erred in failing to find ineffective assistance of counsel for not objecting to the instruction. Instruction No. 14 as given reads as follows:
If you have found beyond a reasonable doubt that one or more of the aggravating circumstances submitted in Instruction No. 13 exist, then, in determining the punishment to be assessed against the defendant for the murder of Elizabeth A. DeCaro, you may also consider:
1. Whether defendant pled guilty to burglary in the second degree on October 23, 1984, in Cause No. 512542 in the circuit court of St. Louis County, Missouri.
2. Whether defendant pled guilty to stealing property of a value of at least $150.00 on October 23, 1984, in Cause Number 512542 in the Circuit Court of St. Louis County, Missouri.
3. Whether the defendant threatened the life of Dave Carr in a letter written to Lisa Carr postmarked April 26, 1994.
4. Whether defendant threatened the life of Dave Carr in a letter written *973 to Lisa Carr postmarked June 27, 1995.
5. Whether defendant choked Therese McCormack by placing his hands around her neck in the summer of 1984.
The instruction failed to comply with MAI-CR3d 313.41 by leaving out the following paragraphs:
You are further instructed that the burden rests upon the State to prove the circumstances beyond a reasonable doubt. On each circumstance that you find beyond a reasonable doubt, all twelve of you must agree as to the existence of that circumstance.
If you do not unanimously find from the evidence beyond a reasonable doubt that the circumstances, then that circumstance shall not be considered by you in returning your verdict fixing the punishment on the defendant.
The jury did not find that any of the nonstatutory aggravating circumstances submitted in the instruction existed. Thus, any error in giving the instruction was not prejudicial. Moreover, Instruction No. 18, patterned after MAI-CR3d 313.48, required the jury to make its findings under Instruction No. 14 "beyond a reasonable doubt." As stated in State v. Petary, 781 S.W.2d 534, 542 (Mo. banc 1989), vacated and remanded, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990); reaffirmed, 790 S.W.2d 243 (Mo. banc); cert. denied, 498 U.S. 973, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990), "The omission of the requirement that the jury find the nonstatutory aggravating factors beyond a reasonable doubt was remedied in this case by [a separate instruction] which included the requirement." The same is true here. On a claim of plain error in an instruction, the defendant is not entitled to any presumption of prejudice. Plain error exists in an instruction only if the trial court misdirects or fails to instruct the jury to such an extent that a manifest injustice results. State v. Doolittle, 896 S.W.2d 27, 29 (Mo. banc 1995). Because of an absence of any prejudice flowing from counsel's failure to object, counsel was not ineffective.
Basile, 942 S.W.2d at 360. This Court's analysis of Basile's claim of unconstitutional errors in the jury instruction on nonstatutory aggravators proceeds along essentially the same lines as its analysis of Basile's first claim in ground seven. Here again, because the jury found at least one valid aggravating factor, any finding by this Court of error in the trial court's submission of Instruction No. 14 would necessarily be harmless beyond a reasonable doubt.[9]Stringer, 503 U.S. at 231-32, 112 S.Ct. 1130; see Jones v. U.S., 527 U.S. 373, 119 S.Ct. 2090, 2109, 144 L.Ed.2d 370 (1999) (affirming Fifth Circuit's finding of harmless error where jury would have returned a recommendation of death even if it had not considered the two allegedly invalid nonstatutory aggravating factors). The submission of Instruction No. 14, if erroneous, was harmless. First, as the Missouri Supreme Court pointed out, the jury did not find the existence of any of the nonstatutory aggravating circumstances submitted. Second, jury findings regarding the nonstatutory aggravating factors were not required before the jury could recommend the death penalty. Because in its review of this claim the Court can find only that a state court error, if made, was harmless beyond a reasonable doubt, the Court concludes that the state court's decision was not an unreasonable application of Supreme Court law. Furthermore, because no prejudice resulted *974 from defense counsel's failure to object to Instruction No. 14, the state court's rejection of Basile's ineffective assistance of counsel claim on that basis was not an unreasonable application of Strickland. Basile's claims in ground seven are denied.

H. GROUND EIGHT: INADEOUATE PROPORTIONALITY REVIEW BY THE MISSOURI SUPREME COURT
In his eighth ground for relief, Basile claims that the Missouri Supreme Court's proportionality review was inadequate, violating Basile's rights to due process under the Fifth and Fourteenth Amendments. Specifically, Basile argues that the state court's reference to factually similar cases, all of which resulted in death sentences, was less equitable than a "frequency" analysis, in which the court would have compared Basile's case with comparable cases to determine how often the death penalty has been imposed in like cases, and whether a sentence of death was justified in this case. Basile also asserts that his death sentence was imposed under the influence of passion, prejudice, and other arbitrary factors, complaining of improper statements by the prosecutor and the introduction of victim impact testimony. The Missouri Supreme Court assessed these claims thus:
Basile claims that Missouri's death statute and its provisions for proportionality review violate his constitutional rights to equal protection, due process, fair trial and freedom from cruel and unusual punishment.
Defendant claims that the Court must compare Basile's sentences with the sentences imposed on similarly situated defendants who did not receive the death penalty to ensure that his death sentence is not disproportionate and to ensure a "meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not." Gregg v. Georgia, 428 U.S. 153, 198, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976). In support of this argument, Basile reiterates facts relied on under other arguments. Most notably, he relies on the victim impact testimony by the victim's mother and sister, and that the victim's mother improperly delved into religious matters during the victim impact testimony.
Defendant confuses two arguments. The first is whether the Court believes that the death sentence was imposed because of passion, prejudice or arbitrary factors. The Court, after reviewing the entire record of more than 2,500 pages, including the relatively few pages devoted to victim impact evidence, concludes that the sentence was not imposed because of passion, prejudice or arbitrary factors. Moreover, the Court concludes that this case is similar to other cases in which the death penalty was imposed where a murder was committed for hire, State v. Blair, 638 S.W.2d 739 (Mo. banc 1982); cert. denied, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983) and State v. Bannister, 680 S.W.2d 141 (Mo. banc 1984), cert. denied, 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985), or where the defendant committed the crime for financial gain, State v. Copeland, 928 S.W.2d 828, 842 (Mo. banc 1996); cert. denied, 519 U.S. 1126, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997); [State v.] Tokar, 918 S.W.2d 753, 769 (Mo. banc); cert. denied, 519 U.S. 933, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996); State v. Ramsey, 864 S.W.2d 320 (Mo. banc 1993); cert. denied, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994); State v. Wise, 879 S.W.2d 494 (Mo. banc 1994); cert. denied, 513 U.S. 1093, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995). The death sentence here is not disproportionate.
Second, contrary to Basile's argument, our proportionality review provided in § 565.035 is not required by the Constitution. Ramsey, 864 S.W.2d at 328; Weaver, 912 S.W.2d at 522; State v. Smulls, 935 S.W.2d 9, 24 (Mo. banc 1996); State v. Whitfield, 939 S.W.2d *975 361, 372-373 (1997). Basile's claim that it was unconstitutional to compare this case to other similar cases in which the death penalty was imposed is meritless.
Basile, 942 S.W.2d at 361. At the outset, the Court notes its agreement with Respondent that in Basile's briefs supporting his habeas petition he again intertwines two arguments  asserting that his "sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor," R.S. Mo. § 565.035(3)(1) as part of his argument that the Missouri Supreme Court's proportionality review pursuant to R.S. Mo. § 565.035(3)(3)[10] was inadequate. Like the Missouri Supreme Court's discussion quoted supra, this Court's discussion shall address these arguments separately.
Basile claims that his death sentence was imposed under the influence of passion, prejudice, and other arbitrary factors. Basile points specifically to improper arguments by the prosecutor during closing argument, impermissible statements by the prosecutor during voir dire, and the introduction of victim impact evidence. Respondent asserts that this claim is noncognizable by this federal habeas court. In Sloan v. Delo, the Eighth Circuit reviewed a similar claim as follows:
Before a federal court can consider a claim on federal habeas, the petitioner must have presented the same facts and legal theories to the state courts. Sloan's argument to the state court regarding the prosecutor's closing did not include a constitutional claim, and he did not mention the fourteenth or eighth amendments in relationship to this claim on direct appeal. He cited only state cases in the relevant portion of his brief, and the Missouri Supreme Court relied entirely on state law in making its decision. Although the Missouri court's review for prejudice and passion is somewhat similar to the "fundamentally unfair" standard used to review allegedly improper statements under the Constitution, see Darden v. Wainwright, 477 U.S. 168, 178-79, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), they are not the same legal theory.
Because Sloan did not challenge the prosecutor's statements using a federal legal theory in the state courts, we cannot consider his claims unless he can either show cause for the default and actual prejudice, or demonstrate that a fundamental miscarriage of justice will otherwise result. Sloan has made no attempt to prove cause and prejudice or actual innocence. His claims about the prosecutor's closing are procedurally barred.
54 F.3d 1371, 1388 (8th Cir.1995). This Court believes that Sloan's reasoning applies equally to Basile's claim here. Like Sloan, Basile's § 565.035(3)(1) argument on direct appeal did not include a constitutional claim, nor reference the Fourteenth or Eighth Amendments; instead, he relied solely on § 565.035(3)(1) and Missouri case law. App. Brief at 110-112. Likewise, the Missouri Supreme Court's analysis of this claim was based entirely on state law. Basile, 942 S.W.2d at 361. Because Basile did not employ a federal legal theory in state court, the Court cannot consider his claim unless he can show both cause and prejudice, or actual innocence. Bousley v. United States, 523 U.S. 614, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998). Basile's failure to reassert this claim in his reply to Respondent's response to his petition suggests that he has abandoned it. In any event, Basile does not offer the Court any cause for this default or any actual prejudice he has suffered as a result of this default. Nor does Basile claim that he is actually innocent of the crime for which he *976 was convicted. In the absence of any showing by Basile that his procedural default of this claim should be excused, the Court finds it procedurally barred and on that basis denies it.[11]
Basile further claims that the Missouri Supreme Court's proportionality review was inadequate, violating Basile's rights to due process under the Fifth and Fourteenth Amendments. The Supreme Court has held that proportionality review by a state appellate court is not required by the Constitution. McCleskey v. Kemp, 481 U.S. 279, 306, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); Pulley v. Harris, 465 U.S. 37, 43, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). "While the review is not mandated by the federal Constitution, once in place it must be conducted consistently with the Due Process Clause." Kilgore v. Bowersox, 124 F.3d 985, 995 (8th Cir.1997). Under Eighth Circuit law, the requirements of due process are met by Missouri's statutory notice that a proportionality review of death sentences will be performed on direct appeal, see R.S. Mo. § 565.014(3)(3), and by a performance of that review by the Missouri Supreme Court, with a conclusion that the penalty was not disproportionate to that imposed in similar cases. LaRette v. Delo, 44 F.3d 681, 688 (8th Cir.1995). A federal habeas court's finding that the Missouri Supreme Court has "addressed and decided the proportionality issue in its opinion" constitutes "the end of our inquiry." Zeitvogel v. Delo, 84 F.3d 276, 283 (8th Cir.1996). "The Constitution does not require [the Court] to look behind [the state court's proportionality] conclusion to consider the manner in which the court conducted its review or whether the court misinterpreted the Missouri statute." Sweet v. Delo, 125 F.3d 1144, 1158 (8th Cir.1997) (citing Walton v. Arizona, 497 U.S. 639, 656, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990)); see also Tokar v. Bowersox, 198 F.3d 1039, 1051 (8th Cir.1999); Ramsey v. Bowersox, 149 F.3d 749, 754 (8th Cir.1998). In this case, the Missouri Supreme Court performed its proportionality review, citing cases to which it compared Basile's, and found that his death sentence was not disproportionate. Basile, 942 S.W.2d at 361. Therefore, this Court may not further review Basile's claim. Foster v. Delo, 39 F.3d 873, 882 (8th Cir.1994); Tokar v. Bowersox, 1 F.Supp.2d 986, 1012 (E.D.Mo.1998).
Notwithstanding this clear Eighth Circuit precedent, Basile vigorously asserts that Missouri's proportionality review statute, R.S. Mo. § 565.035(3)(3), violates procedural due process in its lack of a standard for reviewing selected cases and its lack of a procedure for notifying the parties which cases the state court will examine in its comparative review. However, the Eighth Circuit has considered habeas petitioners' claims that Missouri's proportionality review procedure violates the Eighth Amendment, due process, and equal protection of the laws and has consistently rejected such claims. Ramsey, 149 F.3d at 754; see also Sweet, 125 F.3d at 1159 (citing cases rejecting due process challenges to Missouri's proportionality procedures and rejecting petitioner's equal protection argument); Kilgore, 124 F.3d at 995 (rejecting petitioner's due process argument that the Missouri Supreme Court's proportionality review is arbitrary, with a goal of affirming death sentences). Basile's claims of due process violations are foreclosed by these unambiguous rulings by the Court of Appeals. For the foregoing reasons, the Court finds that the state court's determination of these claims was not an unreasonable application of Supreme Court law. Basile's claims in ground eight are denied.

I. GROUNDS NINE AND THIRTEEN: DUE PROCESS VIOLATIONS AT BASILE'S POST-CONVICTION HEARING
In his ninth ground for relief, Basile asserts that the trial court's adoption verbatim *977 of Respondent's proposed findings of fact and conclusions of law violated his due process rights under the Fifth and Fourteenth Amendments. In his thirteenth ground for relief, Basile claims that his Fifth, Sixth, and Fourteenth Amendment rights were violated when he was denied the right to be present at the hearing on his Rule 29.15 motion. The Missouri Supreme Court dismissed these claims summarily, as follows:
Basile alleges that the motion court erred when it adopted the prosecuting attorney's proposed findings of fact and conclusions of law verbatim. The record does not support this claim. However, even if the court modeled its findings and conclusions after the prosecuting attorney's suggestions, it is not error so long as the court thoughtfully and carefully considered the proposed findings and agreed with their content. State v. White, 873 S.W.2d 590, 600 (Mo. banc 1994). Nothing indicates that this did not occur in this case.
* * * * * *
Basile alleges that he was denied his constitutional rights to due process and freedom from cruel and unusual punishment by being denied to be present at his Rule 29.15 hearing. A Rule 29.15 motion is a civil proceeding and, as such, there is no right to be present under either the rule or the constitution. Leisure v. State, 828 S.W.2d 872, 878 (Mo.), cert. denied, 506 U.S. 923, 113 S.Ct 343, 121 L.Ed.2d 259 (1992); Rule 29.15(h).
Basile, 942 S.W.2d at 362. Respondent contends that both of these claims must fail as a matter of law since they raise noncognizable allegations of infirmities in a state post-conviction review proceeding.
In Jolly v. Gammon, the Eighth Circuit considered a habeas petitioner's claim that the post-conviction court deprived him of due process when it adopted the State's proposed findings of law and fact verbatim. The court held that this claim was noncognizable under federal habeas review and accordingly concluded that it was meritless:
Under 28 U.S.C. § 2254, a federal court's power to review a state conviction is limited. Habeas review is available only where errors of a constitutional magnitude have occurred. As support for his habeas claim, [petitioner] relies on the Missouri Supreme Court's criticism of the practice of adopting one party's suggested findings of law or fact. However, the court's disapproval of this practice cannot convert [petitioner]'s challenge to a proceeding collateral to his detention into a constitutional challenge of the detention itself.
28 F.3d 51, 54 (8th Cir.1994). Also, in Gee v. Groose, the Eighth Circuit found meritless petitioner's argument that he was denied his right to equal protection and due process when the trial court dismissed his Rule 29.15 motion as untimely. 110 F.3d 1346, 1351 (8th Cir.1997). The court observed that "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." Id. at 1351-52 (quoting Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir.1990)).
Because the Constitution does not require states to provide a means of post-conviction review of state convictions, Tokar v. Bowersox, 1 F.Supp.2d 986, 1015 (E.D.Mo.1998), the alleged infirmities in Basile's post-conviction proceedings, as raised in grounds nine and eleven, do not raise a constitutional issue, and are therefore not cognizable in a federal habeas petition. Id. The Court therefore denies grounds nine and eleven as meritless.

J. GROUNDS TEN AND ELEVEN: FAILURE TO CONDUCT INDIVIDUAL VOIR DIRE AND TO EMPANEL A SEPARATE PENALTY PHASE JURY
In his tenth ground for relief, Basile claims that the trial court violated Basile's rights under the Fifth, Eighth, and Fourteenth *978 Amendments by denying defense counsel's motion for individual voir dire and, instead, conducting voir dire of the venire in panels of six venire persons at a time. In his eleventh ground for relief, Basile claims that his sentence of death was imposed in violation of the Fifth, Eighth, and Fourteenth Amendments by the trial court's denial of his motion to empanel a separate penalty phase jury. Respondent asserts that because Basile did not raise these claims in his consolidated appellate brief, both claims are procedurally barred from review. In his briefing of grounds ten and eleven, Basile wholly neglected to address the question of whether these claims are procedurally defaulted. However, review of the Missouri Supreme Court's opinion reveals that Basile indeed failed to present either claim for state appellate review. Basile, 942 S.W.2d 342.
"Federal habeas review is barred when a federal claim has not been `fairly presented' to the state court for a determination on the merits." Hall v. Delo, 41 F.3d 1248, 1249 (8th Cir.1994) (quoting Jones v. Jerrison, 20 F.3d 849, 854 (8th Cir.1994)). "Missouri procedure requires that a claim be presented at each step of the judicial process in order to avoid default." Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir.1994) (internal quotations omitted). Claims that are not raised on direct appeal or in post-conviction proceedings or the appeal thereof generally are barred. See LaRette v. Delo, 44 F.3d 681 (8th Cir.), cert. denied, 516 U.S. 894, 116 S.Ct. 246, 133 L.Ed.2d 172 (1995). Claims first raised in a state habeas petition are also barred. Byrd v. Delo, 942 F.2d 1226, 1231-32 (8th Cir. 1991).
The Court concludes that Basile's claims in grounds ten and eleven are procedurally defaulted. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either `cause' and `actual prejudice,' or that he is `actually innocent.'" Bousley v. United States, 523 U.S. 614, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (internal citation omitted). As Basile has failed to address his procedural default of these claims, he also fails to offer the Court any cause for this default or any actual prejudice he has suffered as a result of this default. Nor does Basile claim that he is actually innocent of the crime for which he was convicted. In the absence of any showing by Basile that his procedural default of these claims should be excused, the Court finds ground ten and ground eleven procedurally barred and on that basis denies them.

K. GROUND TWELVE: REASONABLE DOUBT INSTRUCTIONS
At Basile's trial, the trial court gave the following instructions, in pertinent part:
A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.
Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. The law does not require proof that overcomes every possible doubt. If, after your consideration of all the evidence, you are firmly convinced that a defendant is guilty of the crime charged, you will find him guilty. If you are not so convinced, you must give the defendant the benefit of the doubt and find him not guilty.
* * * * * *
In these instructions, you are told that in order to consider the death penalty, you must find beyond a reasonable doubt certain propositions relating to aggravating circumstances. The burden of causing you to find these propositions beyond a reasonable doubt is upon the state.
A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.

*979 Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the truth of a proposition. The law does not require proof that overcomes every possible doubt. If, after your consideration of all the evidence, you are firmly convinced that a proposition is true, then you may so find. If you are not so convinced, you must give the defendant the benefit of the doubt, and must not find such proposition to be true.
Instruction Nos. 4 and 20. In his twelfth ground for relief, Basile argues that these instructions for proof beyond a reasonable doubt dilute the burden of proof required by the State to prove guilt, thereby violating Petitioner's rights to due process and to be free from cruel and unusual punishment guaranteed under the Fifth, Eighth and Fourteenth Amendments. The Missouri Supreme Court summarily rejected this claim. Basile, 942 S.W.2d at 362.
The Eighth Circuit recently explained its position on Missouri's reasonable doubt instruction in Ramsey v. Bowersox, 149 F.3d 749, 757 (8th Cir.1998):
Ramsey complains that the instructions defined proof "beyond a reasonable doubt" as that leaving the jury "firmly convinced" of Ramsey's guilt. We have already decided we would have to go beyond existing Supreme Court precedent to find constitutional infirmity in Missouri's instruction charging the jury to be "firmly convinced" before convicting a defendant. See Murray v. Delo, 34 F.3d 1367, 1382 (8th Cir.1994). Thus, we have held this challenge to Missouri's reasonable doubt instruction is barred by Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). See Murray, 34 F.3d at 1382; Reese v. Delo, 94 F.3d 1177, 1186 (8th Cir.1996), cert. denied, 520 U.S. 1257, 117 S.Ct. 2421, 138 L.Ed.2d 185 (1997). Also, Justice Ginsburg has indicated her approval of an instruction proposed by the Federal Judicial Center that defines proof beyond a reasonable doubt as proof leaving a juror firmly convinced. See Victor v. Nebraska, 511 U.S. 1, 26-27, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) (Ginsburg, J., concurring).
In response to Respondent's assertion that the Eighth Circuit Court of Appeals has foreclosed Basile's claim under the doctrine of Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), Basile suggests that the Court apply the standard set forth in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The Eighth Circuit, however, has already considered this case, and still found this exact claim foreclosed by Teague:
We first note that the term "firmly convinced" is not comparable to the phrases grave uncertainty, actual substantial doubt, and moral certainty  criticized by the Court in Cage. Moreover, although the Supreme Court has not overruled Cage, a decision announced this term certainly weakened it. In Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), the Supreme Court held that two instructions, one in a California case and one in a Nebraska case, using words somewhat similar to those found constitutionally problematic in Cage, were valid. Considering the reasonable-doubt instructions in their entirety, the Court held that both instructions were valid, even though they contained the terms "moral certainty," "actual and substantial doubt," and "moral evidence." Given the range of acceptable instructions as defined by the Supreme Court, we believe that we would have to break new ground to find that an instruction which charged the jury to be "firmly convinced" before convicting Murray was constitutionally infirm. Therefore, we hold that this claim is barred by Teague.

Murray v. Delo, 34 F.3d 1367, 1382 (8th Cir.1994), cert. denied, 515 U.S. 1136, 115 S.Ct. 2567, 132 L.Ed.2d 819 (1995); see also Harris, 184 F.3d at 751 (finding that Missouri's reasonable doubt instruction "adequately conveyed the jury's obligation *980 that it could convict defendant only upon finding him guilty beyond a reasonable doubt").
The Court is not persuaded that Cage supports Basile's position. Furthermore, the Eighth Circuit Court of Appeals has already considered and rejected the same argument that Basile makes here. Under the Eighth Circuit's recent rulings, this Court would have to break new ground  going beyond existing Supreme Court precedent  to find the challenged instructions constitutionally infirm. Accordingly, the Court cannot conclude that the Missouri Supreme Court's resolution of ground twelve "was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). The Court, therefore, will deny ground twelve. The Court has considered all of Basile's claims separately and together and concludes that he is not entitled to relief under any claim in his Petition, nor do his claims, when considered together, suggest that any relief is appropriate.

V. CERTIFICATE OF APPEALABILITY
Section 102 of the AEDPA requires the Court to issue a certificate of appealability in order for a § 2254 petitioner to appeal a dismissal of a Petition for Writ of Habeas Corpus to the Court of Appeals. Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, § 102 (codified at 28 U.S.C. § 2253). The Court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c)(1) and Rule 22(b) of the Federal Rules of Appellate Procedure. Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997). The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Tiedeman, 122 F.3d at 521. "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issue differently, or the issues deserve further proceedings." Cox v. Norris, 133 F.3d 565, 569 (8th Cir.1997). Finally, Section 2253(c)(3) requires that the certificate of appealability "specify [the] issue or issues with respect to which the applicant has made a substantial showing of the denial of a constitutional right." Tiedeman, 122 F.3d at 522 (citing 28 U.S.C. § 2253(c)). Petitioner has not made such a showing with respect to grounds nine, ten, eleven, or thirteen. The Court, however, finds that the issues raised in grounds one through eight and in ground twelve deserve further proceedings. Accordingly, the Court will grant a certificate of appealability with regard to the claims in those grounds only. The Court will not issue a certificate with regard to any of the other grounds.
Accordingly,
IT IS HEREBY ORDERED that Petitioner Daniel Basile's Petition for Writ of Habeas Corpus by a Petitioner in State Custody Under a Sentence of Death [document # 6] is DENIED.
IT IS FURTHER ORDERED that because the issues deserve further proceedings, the Court will issue a certificate of appealability on Basile's claims in grounds one through eight and in ground twelve. A separate Certificate of Appealability will accompany this Order.

CERTIFICATE OF APPEALABILITY
In accordance with the Memorandum and Order entered this day and incorporated herein,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that Petitioner is GRANTED a Certificate of Appealability to appeal the resolution contained herein of his claims in grounds one through eight and in ground twelve to the United *981 States Court of Appeals for the Eighth Circuit.
NOTES
[1] Although the Missouri Supreme Court spelled Melanie Enklemann's name as "Enkleman," the court reporter records her name as "Enklemann." This Court shall use this latter spelling in its references to this witness.
[2] Like Basile's case, and unlike Hornbuckle, James was governed by the AEDPA, specifically the new subsection (d) added to 28 U.S.C. § 2254.
[3] Jenkins referred to JoAnn as Basile's "mom," explaining that JoAnn was not his mother but that Basile called her "mom." (Tr. 1806-07.)
[4] This Court also employed the Darden test in its analysis of Basile's claims of prosecutorial misconduct in ground one. The Eighth Circuit has noted that "the tests are the same for whether the admission of evidence or prosecutorial misconduct denied a habeas petitioner due process." Anderson v. Goeke, 44 F.3d 675, 678 n. 2 (8th Cir.1995).
[5] Basile further claims that the Missouri Supreme Court's determinations that some of the contested statements were in fact admissible hearsay, as they fell within exceptions to the hearsay rules, were erroneous. In particular, Basile protests that hearsay testimony of statements by Elizabeth DeCaro did not properly fall within the "state of mind" exception, nor did hearsay testimony about Richard DeCaro's statements fall within the exception allowing statements of a coconspirator offered to show the furtherance of the conspiracy. Basile's argument is misplaced. As explained supra, this federal habeas Court is bound by legal interpretations of state law made by the state's highest court. Barrett v. Acevedo, 169 F.3d 1155, 1163 (8th Cir.1999). Because admissibility of evidence at a state trial is a matter of state law, it will form the basis for federal habeas corpus relief only "when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." Id. The Court's evaluation of whether the admission of this evidence violated Basile's constitutional rights proceeds infra.
[6] The only close question arises from Craig Well's testimony as to his conversation with Richard DeCaro after the murder, in which Wells informed DeCaro that Basile had been arrested and that Wells knew about DeCaro's first meeting with Basile. When DeCaro asked Wells which meeting, Wells replied, "The first one, when you asked Danny to do a hit on your wife." Tr. at 1764. DeCaro responded, "Which meeting?", and denied meeting Basile. Basile argues that testimony which implicated him directly in DeCaro's plan to have his wife killed was highly prejudicial. However, this statement also fit neatly into defense counsel's trial strategy, as it suggested that DeCaro framed Basile for the murder and then denied any involvement with him. Basile's counsel's failure to object to Wells's testimony was therefore reasonable. Moreover, in the context of the evidence of Basile's guilt elicited during the course of the trial, the admission of this statement did not alter its outcome.
[7] Moreover, as the Court's discussion of grounds nine and thirteen explains, Basile's claim of a constitutional violation by the Rule 29.15 motion court is noncognizable by this federal habeas court. Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir.1994).
[8] In contrast, in a weighing state, such as Mississippi, upon a jury's finding that a defendant has committed capital murder and that at least one statutory aggravating factor exists, it must weigh the aggravating factor or factors against the mitigating evidence. Stringer, 503 U.S. at 229, 112 S.Ct. 1130. If the aggravating circumstances outweigh the mitigating circumstances, the death penalty is imposed. Sloan v. Delo, 54 F.3d 1371, 1385 (8th Cir.1995). Thus, "[i]n those jurisdictions, the invalidation of an aggravating circumstance is of tremendous import because the removal of that factor from the equation might change the result." Id. (citing Stringer, 503 U.S. at 230-32, 112 S.Ct. 1130).
[9] The Eighth Circuit recently reiterated that when a state court has not conducted its own harmless error analysis on direct appeal, the habeas court applies the Chapman standard; that is, whether the error was "harmless beyond a reasonable doubt." Evans v. Lock, 193 F.3d 1000, 1003 (8th Cir.1999) (citing Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).
[10] R.S. Mo. § 565.035(3) provides:

With regard to the sentence [of death], the [Missouri] supreme court shall determine: (3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence and the defendant.
[11] Moreover, this claim would fail on the merits, even if it were not procedurally barred. The Court has considered and rejected the arguments Basile raises in this claim in grounds one, two, and six.